# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEREMY BIGWOOD,

      **Plaintiff,**

v.                                          **Case No. 11-cv-602 (KBJ/GMH)**

UNITED STATES DEPARTMENT OF
DEFENSE and CENTRAL
INTELLIGENCE AGENCY,

      **Defendants.**

## REPORT AND RECOMMENDATION

On February 24, 2015, this case was referred to the undersigned for full case

management. Currently ripe for resolution are defendants' motion for summary judgment and

plaintiff's motion for leave to file a sur-reply to defendants' motion for summary judgment.

Upon a thorough review of the parties' briefs and the entire record herein,[1] the undersigned

---

[1] The relevant documents for this Report and Recommendation are as follows:

(1) Plaintiff's Complaint ("Compl.") [Dkt. 1];
(2) Defendants' Motion for Summary Judgment ("Defs.' Mot.") [Dkt. 25];
(3) Defendants' Statement of Material Facts Not in Dispute ("Defs.' Facts") [Dkt. 25-1];
(4) Declaration of Major Lisa R. Bloom ("Bloom Decl.") [Dkt. 25-2];
(5) Declaration of Brigadier General Thomas W. Geary ("Geary Decl.") [Dkt. 25-3];
(6) Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp.") [Dkt. 28];
(7) Plaintiff's Statement of Genuine Issues ("Pl.'s Facts") [Dkt. 28-1]
(8) Plaintiff's Supplemental Statement of Facts ("Pl.'s Suppl. Facts") [Dkt. 28-1];
(9) Declaration of Jeremy Bigwood ("Bigwood Decl.") [Dkt. 28-3];
(10) Declaration of Pamela Spees ("Spees Decl.") [Dkt. 29];
(11) Mission Analysis: Potential Support to DOS in Honduras PowerPoint ("Mission Analysis PowerPoint") [Dkt. 30, Exhibit M];
(12) Defendants' Reply in Further Support of Their Motion for Summary Judgment ("Defs.' Reply") [Dkt. 33];
(13) Supplemental Declaration of Major Lisa R. Bloom ("Suppl. Bloom Decl.") [Dkt. 33-1];
(14) Plaintiff's Motion for Leave to File Sur-Reply Memorandum ("Pl.'s Mot. for Leave") [Dkt. 34];
(15) Plaintiff's Proposed Sur-Reply ("Pl.'s Proposed Sur-Reply") [Dkt.34-1];
(16) Defendants' Opposition to Plaintiff's Motion for Leave to File Sur-Reply Memorandum ("Defs.' Opp.") [Dkt. 35];
(17) Plaintiff's Reply in Support of Motion for Leave to File Sur-Reply Memorandum ("Pl.'s Reply") [Dkt. 36];
(18) District Court's Order of September 8, 2014 ("Order, Sept. 8, 2014") [Dkt. 37]; and

recommends that defendants' motion for summary judgment be granted, and that plaintiff's motion for leave to file a sur-reply to defendants' motion for summary judgment be denied.

## I.    BACKGROUND

Plaintiff in this case is Jeremy Bigwood, a freelance investigative journalist.   Pl.'s Suppl. Facts ¶ 1; Compl. ¶ 16.  Defendants are two Executive Department agencies – the Department of Defense's ("DOD") Southern Command ("Southcom") and the Central Intelligence Agency ("CIA").  Id. ¶¶ 17, 19; 5 U.S.C. § 552(f)(1).  Southcom is a joint command within the DOD comprised of, inter alia, members of the United States Army, Navy, Air Force, Marine Corps, and Coast Guard.  Compl. ¶ 19.  It is "responsible for providing contingency planning, operations, and security cooperation for Central and South America including Honduras."  Id. This action arises out of plaintiff's requests to Southcom and the CIA, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., in which plaintiff sought information about the June 28, 2009, coup d'état in Honduras.  Pl.'s Facts ¶ 2; Compl. ¶¶ 1, 2.  This Report and Recommendation only addresses plaintiff's FOIA requests to Southcom, as plaintiff no longer opposes defendants' motion for summary judgment concerning plaintiff's FOIA requests to the CIA.  Pl.'s Facts ¶¶ 19–27; Pl.'s Opp. at 1.

In plaintiff's first FOIA request to Southcom, submitted on July 1, 2009, plaintiff sought:

> all records relating to the coup against Honduras' President
> Manuel Zelaya including, but not limited to:  a. any observations
> or reports about the activities of the Honduran Armed Forces with
> respect to the coup—as well as the coup itself; b. any  records of
> the passage of the kidnapped president through any military bases,
> such as Soto Cano—which has a significant US presence; c. any
> reports about the coup d'état before it actually took place; and d.
> inter-agency communications to and from [Southcom], as US
> officers in Honduras  may have been informing other US
> government entities about the coup.

---

(19) Supplemental Vaughn Index ("Suppl. Vaughn Index") [Dkt. 38].

Compl. ¶ 23 (internal quotation marks omitted).  Plaintiff asked that his FOIA request receive expedited processing.  Id. ¶ 24.  On November 29, 2010, Southcom sent plaintiff an "interim response," confirming receipt of plaintiff's July 2009 FOIA request and acknowledging that Southcom had, on November 24, 2010, granted plaintiff's request for expedited processing.  Pl.'s Suppl. Facts ¶ 2; Compl. ¶ 32.  On February 7, 2011, plaintiff submitted a written administrative appeal to Southcom, requesting review of Southcom's failure to make a determination regarding his FOIA request.  Pl.'s Suppl. Facts ¶ 3; Compl. ¶¶ 37, 38.  On February 10, 2011, Southcom accepted plaintiff's letter of administrative appeal.  Pl.'s Suppl. Facts ¶ 3; Compl. ¶¶ 37, 39.  Southcom never responded to the administrative appeal.  Compl. ¶¶ 37, 39.

In his second FOIA request to Southcom, submitted on July 8, 2009, plaintiff "requested all records, from May 1, 1979, relating to Honduran Army General Romeo Vásquez Velásquez,[2] including, but not limited to, any biographical sketches of him."  Pl.'s Facts ¶ 2; Compl. ¶ 43.  Plaintiff again asked that his FOIA request receive expedited processing.  Compl. ¶ 44.  On December 16, 2010, Southcom sent plaintiff another "interim response," confirming receipt of plaintiff's second FOIA request and granting plaintiff a fee waiver, but not addressing plaintiff's request for expedited processing.  Id. ¶ 49; Pl.'s Suppl. Facts ¶ 2.  On February 7, 2011, plaintiff submitted a written administrative appeal to Southcom, seeking review of Southcom's failure to make a determination as to his second FOIA request.  Pl.'s Suppl. Facts ¶ 3; Compl. ¶¶ 52, 53.  On February 10, 2011, Southcom accepted plaintiff's letter of administrative appeal.  Compl. ¶¶ 52, 54.  Southcom never responded to plaintiff's administrative appeal.  Id.

---

[2] According to Plaintiff, General Romeo Vasquez Velasquez was Chief of Staff of the Honduran Army Forces and was "a key participant in organizing and carrying out the coup."  Bigwood Decl. ¶ 7.

On June 20, 2011, Southcom produced 66 documents consisting of 272 pages in response to plaintiff's requests. Pl.'s Suppl. Facts ¶ 5. On July 7, 2011, Southcom produced an additional five documents consisting of 26 pages. Defs.' Facts ¶ 5. Upon review of these initial productions, plaintiff asserted that DOD had failed to produce responsive documents and had over-redacted the documents it did produce. Pl.'s Opp. at 1. In response, while maintaining that it had conducted an adequate search for responsive records, Southcom agreed to conduct a second search to address plaintiff's concerns. Defs.' Facts ¶ 6. Following the second search for documents, Southcom produced 88 additional documents consisting of 784 pages on September 26, 2013. Pls.' Suppl. Facts ¶ 7; Bloom Decl. ¶ 12.

On March 23, 2011, plaintiff filed the present action, challenging Southcom's response to his FOIA requests on two bases: he contends that Southcom's searches for responsive documents were inadequate, and that Southcom inappropriately invoked several FOIA exemptions to withhold responsive documents. Pl.'s Opp. at 11, 26. On January 28, 2014, defendants filed a motion for summary judgment on the grounds that they had conducted an adequate search and had turned over all records responsive to plaintiff's requests, except those properly withheld under the applicable FOIA exemptions. Defs.' Mot. at 6. On April 8, 2014, pursuant to Fed. R. Civ. P. 7(b) and Local Rule 7, plaintiff filed a motion for leave to file a sur-reply to respond to arguments raised in defendants' April 1, 2014, reply brief in support of their motion for summary judgment.

On September 8, 2014, Judge Ketanji Brown Jackson ordered defendants to submit a supplemental Vaughn index, denied defendants' motion for summary judgment without prejudice, and denied plaintiff's motion for leave to file a sur-reply as moot. Order, Sept. 8, 2014. Pursuant to the Court's September 8, 2014, Order, defendants filed a supplemental

4

Vaughn index on September 22, 2014.  Subsequently, defendants' motion for summary judgment and plaintiff's motion for leave to file a sur-reply were deemed renewed and were referred to the undersigned for a Report and Recommendation on February 24, 2015.  Both motions are now ripe for consideration.

## II.        LEGAL STANDARDS

In enacting FOIA in 1966, Congress provided a means "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  ACLU v. Dep't of Justice, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976)).  However, recognizing the need to balance this public interest with the "legitimate governmental and private interests [that] could be harmed by release of certain types of information," Congress enumerated nine FOIA exemptions that permit agencies to withhold information from disclosure.  United Techs. Corp. v. Dep't of Def., 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotations omitted); see 5 U.S.C. § 552(b).  "These exemptions are explicitly made exclusive, and must be narrowly construed."  Milner v. Dep't of the Navy, 562 U.S. 562, 565 (2011) (internal citations and quotations omitted).

In order to obtain information through FOIA, a requester must file a request for production with the appropriate agency.  See generally 5 U.S.C. § 552(a).  If a FOIA petitioner wishes to challenge the agency's response, the petitioner must first exhaust his or her administrative remedies.  Only then can the petitioner file a civil action challenging the agency's response to his or her request.  See id. 5 U.S.C. § 552(a)(4)(B); Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir. 2004).

"FOIA cases typically and appropriately are decided on motion for summary judgment."  Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing

Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is appropriate if the pleadings on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In the FOIA context, a district court reviewing a motion for summary judgment must conduct a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligation under FOIA. 5 U.S.C. § 552(a)(4)(B); see also In Def. of Animals v. Nat'l Insts. of Health, 543 F. Supp. 2d 83, 92 (D.D.C. 2008). Specifically, the court must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested are not agency records or are exempt from disclosure under the FOIA." See 5 U.S.C. § 552(a)(4)(B); Assassination Archives & Research Ctr. v. CIA, 334 F.3d 55, 57 (D.C. Cir. 2003) (internal quotations omitted). The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester. See Willis v. Dep't of Justice, 581 F. Supp. 2d 57, 65 (D.D.C. 2008).

In general, a FOIA requester may challenge the adequacy of the agency's search for responsive records, the adequacy of the agency's application of FOIA exemptions to his or her request, or both.[3] A court assesses the adequacy of the federal agency's search for responsive records by applying a reasonableness test. Campbell v. Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998). The adequacy of a FOIA search is generally determined by the appropriateness of the methods used to carry out the search, and not by the actual search results. Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). The agency must make "a good faith effort to conduct a search for the requested records, using methods which can be

---

[3] In the D.C. Circuit, requesters may also challenge an agency's policy or practice, arguing that it "will impair the party's lawful access to information in the future." Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 132 (D.D.C. 2013) (quoting Payne Enters., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988) (internal quotation marks omitted). In the instant action, plaintiff does not allege a "policy-or-practice" claim.

6

reasonably expected to produce the information requested," and it "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). That said, the agency's search for records need not be exhaustive, but merely reasonable. Id. The proper inquiry is not whether there might exist additional documents possibly responsive to a request, but whether the agency conducted a search reasonably calculated to uncover relevant documents. Id.; see also Iturralde, 315 F.3d at 315.

To demonstrate that a search for documents was reasonable at the summary judgment phase, a federal agency may submit "reasonably detailed" affidavits or declarations that describe the search performed. Schoenman v. FBI, 764 F. Supp. 2d 40, 45 (D.D.C. 2011). The affidavits or declarations may be submitted by an individual who either participated in the search or coordinated the search. See Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative, 237 F. Supp. 2d 17, 23 (D.D.C. 2002); see also SafeCard Servs. v. Sec. Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991). In compliance with the reasonableness standard, these affidavits "must . . . set [ ] forth the search terms and the type of search performed, and aver [ ] that all files likely to contain responsive materials (if such records exist) were searched." Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995). If the agency can make that showing, then the burden shifts to the plaintiff to provide evidence sufficient to raise "substantial doubt" about the adequacy of the agency's search. Iturralde, 315 F.3d at 314 (quoting Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999)).

A FOIA requester may also challenge the adequacy of the agency's application of FOIA exemptions to his or her request. See ACLU v. Dep't of Defense, 628 F.3d 612, 617 (D.C. Cir. 2011). The agency bears the burden of demonstrating that its response, whether it withheld

information in whole or in part, was appropriate. Id. at 619. That burden is satisfied through the submission of an affidavit or declaration and, if necessary, a Vaughn index.[4] Am. Immigration Lawyers Ass'n v. Dep't of Homeland Sec., 852 F. Supp. 2d 66, 72 (D.D.C. 2012) (citing Vaughn v. Rosen, 484 F.2d 820, 827–28 (D.C. Cir. 1973)). A court may award summary judgment based solely upon the information provided in affidavits or declarations when those affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record, nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984)). Provided that the agency affidavits or declarations are "relatively detailed and non-conclusory," they are accorded "a presumption of good faith," which can only be rebutted with clear evidence of bad faith, and not by "purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., 926 F.2d at 1200 (internal citations and quotations omitted).

## III.     ANALYSIS

Plaintiff challenges both the adequacy of Southcom's search for documents responsive to his two FOIA requests and Southcom's application of two of the six FOIA exemptions that were at issue – Exemptions 1 and 7(E).[5] See Pl.'s Opp. at 11, 29, 33–34. Plaintiff's challenges will

---

[4] A Vaughn index is an affidavit that "describe[s] each withheld document, state[s] which exemption the agency claims for each withheld document, and explain[s] the exemption's relevance." Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 774 (D.C. Cir. 2002).

[5] Defendants concluded that certain materials were exempt from production under six FOIA exemptions – Exemptions 1, 3, 5, 6, 7(D) and 7(E). See Defs.' Mot. at 9, 17, 20, 22, 24. In plaintiff's opposition to defendants' motion for summary judgment, plaintiff only contests Southcom's invocation of FOIA Exemptions 1 and 7(E). See Pl.'s Opp. at 28–34. In so doing, plaintiff effectively conceded defendants' application of Exemptions 3, 5, 6, and 7(D). This Court accordingly limits its review to Southcom's application of FOIA Exemptions 1 and 7(E). See Fischer v. Dep't of Justice, 723 F. Supp. 2d 104, 111 (D.D.C. 2010) ("Accepting the unchallenged [FOIA] exemptions as conceded, the Court need not address their applicability and will grant summary judgment for

8

be addressed in turn below.  Thereafter, the Court will address plaintiff's motion for leave to file a sur-reply to defendant's motion for summary judgment.

A.    Southcom Conducted an Adequate Search in Response to Plaintiff's FOIA Requests

According to plaintiff, Southcom is not entitled to summary judgment because Southcom's electronic and manual searches for responsive records were inadequate.  Pl.'s Opp. at 12–22.  To support the reasonableness of its searches, Southcom submitted two declarations of Major Lisa R. Bloom to explain the steps taken to comply with plaintiff's FOIA requests.  Major Bloom manages the operations of Southcom's FOIA Office and supervised Southcom's searches for records responsive to plaintiff's FOIA requests.  Bloom Decl. ¶ 1.  In her first declaration, Major Bloom describes the process of Southcom's searches as follows:

> At the direction of my FOIA team, [Southcom] personnel search Agency records systems under their control to identify documents and other information which may be responsive to individual requests.  Subject matter experts within [Southcom] then determine whether responsive records or portions thereof should be withheld under any applicable statutory FOIA or Privacy Act exemptions.  Upon completion of the search and redaction process, the records are forwarded to my office for review.

Id.

According to Major Bloom, "a series of discussions between DOD and Plaintiff established that the appropriate time period for the search was from May 1, 2009 through April 21, 2011."  Id. ¶ 7.  Southcom selected the following search terms for its initial search based on its communications with plaintiff:

Coups/Coups d'états;

---

defendant with respect to all records withheld or redacted under those exemptions."); Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), aff'd 98 Fed. Appx. 8 (D.C. Cir. 2004).

Zelaya;
Honduras 2009;
Elections 2009;
Zelaya's Arrest;
Zelaya Resignation;
Military Activities/Zelaya;
Court Decisions/Zelaya;
Manuel Zelaya;[6]
Zelaya Exile;
Zelaya Oust;
Zelaya Arrest;
Zelaya Removal;
Honduras Coups;
Romeo Vasquez;
CHOD Vasquez; and
General Vasquez.

Id. Southcom identified the following six subcomponents as likely to contain responsive

records based on the nature of plaintiff's FOIA requests and the search terms employed:

Intelligence Directorate ("J2");
Operations Directorate ("J3");
Plans Directorate ("J5");
Office of Public Affairs;
Security Cooperation Office ("SCO" ), otherwise known as the United States Military
Group ("MILGRP"), located at the U.S. Embassy in Tegucigalpa, Honduras; and
Joint Task Force-Bravo ("JTF-B") at Soto Cano Air Base in Comoyagua, Honduras.

Defs.' Mot. at 15; Bloom Decl. ¶ 8. Major Bloom also explains in her declaration the basis for

Southcom's deliberate selection of these six subcomponents to be searched for responsive

materials:

> The Intelligence Directorate, J2, was the agency most likely to
> have received or sent inter-agency reports concerning the subject
> matter of Plaintiff's request. The Operations Directorate, J3, is the
> [Southcom] directorate tasked with responding to events in
> [Southcom's] area of focus, including the events that form the
> subject matter of Plaintiff's FOIA request. The Strategy, Policy,

---

[6] Plaintiff notes that Major Bloom's original declaration misspells the former Honduran President's first name in the list of Southcom's search terms. Pl.'s Opp. at 15 n. 5. In her supplemental declaration, Major Bloom clarifies that the misspelling of President Zelaya's first name in her first declaration – spelled "Manuel" as opposed to "Manual" – was a typographical error in her declaration, not in the search terms that were actually used to search for responsive documents. Suppl. Bloom Decl. ¶ 4.

and Plans Directorate, J5, develops mission guidance and long-range plans in response to events. The Public Affairs Office was tasked with searching for responsive documents because it may have issued news releases or received publicly available documents on the subject matter of Plaintiff's request. The Security Cooperation Office, also known as SCO or MILGRP Honduras . . . sends occasional situation reports concerning its mission; such reports may have related to the subject matter of the Plaintiff's request. Insofar as Plaintiff's request also sought information regarding Soto Cano Air Base, [Southcom's] FOIA office also tasked Joint Task Force Bravo, which is located at Soto Cano Air Base, with conducting searches for responsive documents.

Bloom Decl. ¶ 9.

Southcom's FOIA office directed personnel within these six subcomponents to "conduct manual searches of their paper files, as well as electronic searches of their desktops, hard drives, shared drives, storage data bases, and Microsoft Outlook email files," using the identified search terms. Bloom Decl. ¶ 10. Southcom sent a contract worker with the FOIA office to Honduras to assist components located in Honduras with this search. Id. As a result of these searches, on June 20, 2011, Southcom produced to plaintiff 66 documents consisting of 272 pages responsive to his first FOIA request, and on July 7, 2011, produced five documents consisting of 26 pages in response to his second FOIA request. Pl.'s Opp. at 6.

Following plaintiff's review of these materials, the parties, including Southcom's counsel, plaintiff, and plaintiff's counsel, held a teleconference on September 6, 2011, to discuss plaintiff's concerns with Southcom's production. Pl.'s Opp. at 7. During the teleconference, DOD counsel disclosed the search terms used for its search and four of the six directorates involved in the search. Id. During the teleconference, plaintiff raised his concerns that the documents he had received did not include emails or primary records from Soto Cano Air Base, where President Zelaya was flown out of Honduras, or a cable from the U.S. Embassy in

11

Tegucigalpa to various Southcom subcomponents that plaintiff believed was responsive to his requests because he had previously received the cable in response to a different FOIA request to a different federal agency. Id. at 7–8.

Although Southcom maintained that its initial search was adequate, it agreed to conduct a second search to address certain of plaintiff's concerns, including his request to produce additional Intelligence Executive Highlights and inter-agency communications. Bloom Decl. ¶ 11. During the second search, Southcom used the following eight search terms, all of which had been used in the first search: [7]

> Manuel Zelaya;
> Zelaya Exile;
> Zelaya Oust;
> Zelaya Arrest;
> Zelaya Removal;
> Honduras Coup;
> Romeo Vasquez; and
> CHOD Vasquez.

Suppl. Bloom Decl. ¶ 5. The time period that Southcom used to identify materials responsive to the second search was from May 1, 2009[8] through the end date of the second search. Id. ¶ 5.

For the second search, Southcom identified the following four subcomponents as most likely to have responsive records: J2, J3, SCO, and JTF-B. Bloom Decl. ¶ 12. In particular, J2 was the "directorate that produced the Intelligence Executive Highlights and was likely to have relevant inter-agency communications." Id. Major Bloom avers that "[b]ased on a review of the

---

[7] In plaintiff's opposition to Southcom's motion for summary judgment, plaintiff asserts that Southcom failed to provide plaintiff with a list of search terms used for the second search. Pl.'s Opp. at 15. In response to plaintiff's challenge, Southcom submitted Major Bloom's second declaration, appended to defendants' reply in further support of their motion for summary judgment, wherein she sets forth the search terms for the second search. Suppl. Bloom Decl. ¶ 5. This declaration supplements Major Bloom's initial declaration and the undersigned accordingly considers both declarations to make a determination on the adequacy of Southcom's search. See DeSilva v. Dep't of Housing & Urban Dev., 36 F. Supp. 3d 65, 72 (D.D.C. 2014) (considering the supplemental declarations submitted by an agency to cure any deficiencies in the previously submitted declarations).

[8] The coup d'état in Honduras occurred on June 28, 2009.

12

documents located in both sets of searches, [Southcom] determined that no other components of [Southcom] were likely to have information responsive to plaintiff's FOIA request." Id. ¶ 13.

Prior to the second search, Southcom's FOIA office instructed these four subcomponents to conduct "thorough manual searches of their paper files, as well as electronic searches of their desktops, hard drives, shared drives, storage databases, and Microsoft Outlook email files for documents responsive to the plaintiff's FOIA requests," using the identified search terms. Id. ¶ 12. Southcom also provided subcomponents J2, SCO, and JTF-B with the following supplemental search instructions:

- J2 and JTF-B were instructed to search the daily intelligence summaries that referenced the 2009 coup from May 1, 2009 to the present and to search all records that referenced General Vasquez regardless of the timeframe;

- SCO was instructed to search for any Situation Reports ("SitReps") not previously provided, focusing on the periods of time from May 1, 2009-June 28, 2009, August 14–15, 2009, August 17–31, 2009, September 1–21, 2009, September 25, 2009, September 28, 2009, and October 2, 2009-December 31, 2009; and

- JTF-B was instructed to search for a prospective After-Action Report ("AAR") mentioned in a document identified in the first production.

Suppl. Bloom Decl. ¶ 5. As a result of the second search, on September 26, 2013, Southcom produced to plaintiff 88 additional documents consisting of 784 pages. Bloom Decl. ¶ 12. The majority of the documents released in the second production were daily versions of "Intelligence Executive Highlights" produced by Southcom's Intelligence Directorate. Def.'s Mot. at 8. In total, Southcom provided plaintiff with 1,082 pages of material.

Based on a thorough review of Southcom's declarations regarding its searches for documents responsive to plaintiff's FOIA requests, the undersigned finds those searches were reasonable and sufficient under the law. In her declarations, Major Bloom sets forth the methodology of the search process; details the agency's rationale in identifying the specific

13

subcomponents with potentially responsive records; indicates the types of searches performed, both electronic and manual; lists the various databases searched; and specifies the search terms used.   Bloom Decl. ¶¶ 7–13; Suppl. Bloom Decl. ¶¶ 4–5.  Major Bloom also avers that Southcom determined, based on its review of documents located in both sets of searches, that "no other components of [Southcom] were likely to have information responsive to Plaintiff's FOIA request."  Suppl. Bloom Decl. ¶ 13.  Plaintiff has presented no reason to doubt that conclusion or any evidence of bad faith by the agency in performing the searches.  Indeed, Southcom's willingness to conduct a second search for documents responsive to plaintiff's FOIA requests to address certain of his concerns, and to send personnel to Honduras to assist in the search for documents responsive to his requests, would substantially undercut any suggestion of bad faith.

Under the law of this Circuit, nothing more need be shown by the federal agency.  Nation Magazine, 71 F.3d at 890.  As such, the undersigned recommends that the Court deem Southcom's declarations satisfactorily "detailed and non-conclusory," and find its search for documents responsive to plaintiff's FOIA requests to be adequate.  See Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  Nevertheless, for the sake of completeness, the undersigned will address each of plaintiff's specific attacks on the adequacy of Southcom's electronic and manual searches.

   1. Plaintiff's Challenge to the Adequacy of Southcom's Electronic Searches

Plaintiff contends that Southcom's electronic searches were inadequate because, in his view, Southcom:  (i) did not provide all of the search terms used; (ii) used compound phrases and/or failed to identify the connectors and Boolean operators used; (iii) did not identify the

14

systems, software, and personnel involved in the search; and (iv) did not identify certain documents that plaintiff expected Southcom's searches would locate. Pl.'s Opp. at 14–21.

i.    The Search Terms Used for the Electronic Searches

Plaintiff first attacks Southcom's searches as inadequate because the agency did not "attest that it used all of [the identified] search terms across all of the databases it searched. Nor [did] it specify what additional words or phrases, if any, were 'included' in its electronic search efforts, or where those additional terms were used." Pl.'s Opp. at 15.[9]

Plaintiff's objections do not withstand scrutiny. In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Physicians for Human Rights v. Dep't of Def., 675 F. Supp. 2d 149, 164 (D.D.C. 2009). Rather, a federal agency has "discretion in crafting a list of search terms that 'they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request.'" Agility Public Warehousing Co. K.S.C. v. Nat'l Sec. Agency, No. 14-0946, 2015 WL 4183443, at *16 (D.D.C. July 10, 2015) (quoting Physicians for Human Rights, 675 F. Supp. 2d at 164). Where the search terms are reasonably calculated to lead to responsive documents, a court should neither "micromanage" nor second guess the agency's search. Id.; see also Johnson v. Exec. Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micromanage the executive branch."); Liberation Newspaper v. Dep't of State, No. 13-cv-0835, 2015 WL 709197, at *6 (D.D.C. Feb. 19, 2015)("Where the agency's search terms are

---

[9] Plaintiff also contends that Southcom failed to disclose the search terms used for its second search. Pl.'s Opp. at 15. That issue has been resolved. Though Major Bloom did not include the terms for the supplemental search in her initial declaration, she did include that information in her supplemental declaration. Suppl. Bloom Decl. at ¶ 5.

reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior.").

Here, Southcom provided the Court with a list of search terms used in the first and second search. Bloom Decl. ¶ 7; Suppl. Bloom Decl. ¶ 5. The undersigned cannot say that the terms selected by Southcom were unreasonable or an abuse of discretion. After comparing those terms with plaintiff's two FOIA requests – one seeking information about the removal of Honduran President Zelaya and the other seeking information about Honduran General Velásquez – it certainly appears more than likely that the terms utilized would identify responsive documents. See Physicians for Human Rights, 675 F. Supp. 2d at 164 ("[I]n responding to a FOIA request, an agency is only held to a standard of reasonableness; as long as this standard is met, a court need not quibble over every perceived inadequacy in an agency's response, however slight.").

Plaintiff nonetheless challenges Southcom for not stating affirmatively that the identified search terms were used across all of the databases searched, and that no additional search terms were used in conducting the search other than those identified in Major Bloom's declaration. Pl.'s Opp. at 15. As for the former contention, Major Bloom clearly states in her declaration that the six subcomponents were "directed to conduct . . . electronic searches of their desktops, hard drives, share drives, storage data bases and Microsoft Outlook email files using the search terms . . . for documents responsive to the Plaintiff's FOIA requests." Bloom Decl. ¶ 10. Plaintiff provides no basis for this Court to disbelieve that statement. Plaintiff's second contention is nonsensical. If, in fact, Southcom used search terms in addition to those identified by Major Bloom in her declarations, it would only benefit plaintiff because the additional terms may have increased the possibility that additional responsive materials would be identified. The

16

undersigned does not understand how that possibility undercuts, in any way, the adequacy of Southcom's electronic searches.

As they stand, Southcom's declarations sufficiently convey to the Court the nature and scope of the searches, the records systems searched, the search terms used, the temporal scope of the search, and the agency subcomponents involved in the searches. See Bloom Decl. ¶¶ 7–10, 12–13, 16; Suppl. Bloom Decl. ¶¶ 4–5. That is all that is required. See Nation Magazine, 71 F.3d at 890 (citing Oglesby, 920 F.2d at 68).

### ii. Connectors, Boolean Operators, and Compound Phrases

Plaintiff also contends that he is unable to evaluate the adequacy of Southcom's searches because Major Bloom's declarations do not provide information concerning connectors or Boolean operators utilized in its searches. Pl.'s Opp. at 16–17. He also critiques Southcom's use of compound phrases, arguing that the inclusion of compound phrases in a search "is generally an ineffective search strategy" that can yield incomplete results depending upon the type of search engine used.[10] Id. at 17–18.

In support of his arguments, plaintiff cites to case law from the Southern District of New York. See Pl.'s Opp. at 16, 18 (citing Nat'l Day Labor Org. Network v. ICE, 877 F. Supp. 2d 87 (S.D.N.Y. 2012); Families for Freedom v. U.S. Customs & Border Prot., 837 F. Supp. 2d 331

---

[10] Plaintiff's reliance on a search expert to advance his argument is unavailing. See Pl.'s Opp. at 4; Regard Decl. As this Court has previously recognized, the adequacy of a federal agency's search for documents in response to a FOIA request is not a topic on which its needs the assistance of an expert. See Hall v. Central Intelligence Agency, 538 F. Supp. 2d 64, 72-73 (D.D.C. 2008) ("[T]he Federal Rules of Evidence and Federal Rules of Civil Procedure do not permit testimony to be introduced carte blanche merely because they are offered by an expert."). Further, Mr. Regards – plaintiff's proffered search expert – is not a DOD or Southcom employee, and he does not aver that he has ever worked at either the DOD or Southcom. See Regard Decl. ¶¶ 1-3. Nor does he attest to his familiarity with the record systems maintained by Southcom. Id. He therefore lacks a foundational knowledge of the events underlying Southcom's search, and his testimony serves as nothing more than an opinion on the adequacy of the search. See Hall, 583 F. Supp. 2d at 72 ("More fundamentally, the Declaration is at most an opinion that defendant did not conduct an adequate search. [Declarant] cannot speak to the truth of the events he alleges to have occurred, to which he has no personal knowledge."); see also Judicial Watch v. Dep't of Commerce, 337 F. Supp. 2d. 146, 161 (D.D.C. 2004) (finding that plaintiff's attempt to discredit FOIA search with its own declaration was "insufficient to overcome the personal knowledge-based" declarations submitted by the agency).

(S.D.N.Y. 2011); and Fox News Network, LLC v. Dep't of the Treasury, 678 F. Supp. 2d 162 (S.D.N.Y. 2009)).  The requirements of those cases, however, exceed those imposed by the "reasonableness" standard followed in this Circuit.  Indeed, in Citizens for Responsibility and Ethics in Washington v. National Indian Gaming Commission, 467 F. Supp. 2d 40 (D.D.C. 2006) ("CREW"), the Court applied the law of this Circuit and found a federal agency's search description sufficient despite the absence of information concerning any Boolean operators or connectors used to facilitate an electronic search.  Id. at 50.  According to the Court, "FOIA does not demand this degree of detail."  Id.  Because Southcom's descriptions of its search include the basic information required – what records were searched, by whom, and in what manner – they are sufficient.  See Schrecker v. Dep't of Justice, 217 F. Supp. 2d 29, 33 (D.D.C. 2002) ("An agency's affidavits need not be precise but they must provide basic information on what records were searched, by whom, and in what manner.").

iii.  Systems, Software, and Search Personnel

Plaintiff also singles out Southcom's declarations because they do not describe the "in-place operating systems or software" that was searched, nor "identify – either by name or by position – any of the individuals who designed, supervised, or conducted the search."  Pl.'s Opp. at 15.  But again, this Circuit imposes neither requirement on federal agencies.  In CREW, this Court expressly held that an agency's FOIA declaration need not provide "information regarding the actual databases or indices searched." 467 F. Supp. 2d at 50.  Plaintiff's assertion that Southcom should be required to identify the individuals, by name, who conducted the searches,[11] fares no better.  In Harrison v. Federal Bureau of Prisons, 311 F. Supp. 2d 54 (D.D.C. 2009),

---

[11] In Major Bloom's declarations, she specifies that the searches for documents responsive to plaintiff's FOIA requests were conducted under the direct, in-person supervision of personnel from Southcom's FOIA office – the office specifically tasked with responding to plaintiff's two requests.  Bloom Decl. ¶ 1; Suppl. Bloom Decl. ¶ 1.  She does not, however, go so far as to identify the search personnel by name.

Judge Friedman characterized as "frivolous" a similar demand by a FOIA petitioner for the names of agency personnel responsible for the search. Id. at 65. The undersigned agrees with that assessment. Complying with plaintiff's demand would raise significant privacy issues. Lesar v. United States Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980) (approving redaction of law enforcement agents' names under Exemption 7(C) where disclosure could subject them to annoyance or harassment in either their official or private lives). Moreover, the undersigned cannot fathom how providing the names of search personnel would significantly inform the Court's analysis of the adequacy of Southcom's search for documents responsive to his FOIA requests.

In any event, reasonableness remains the crux of the Court's inquiry. This Circuit does not require a federal agency to provide the exacting level of detail about its search methodology that plaintiff demands. See Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (FOIA affidavits and declarations need not "set forth with meticulous documentation the details of an epic search for the requested records"); see also White v. Dep't of Justice, 840 F. Supp. 2d 83, 89 (D.D.C. 2012) ("Although the affidavit could in theory be more detailed, that fact alone does not warrant denying summary judgment in favor of Defendant.").

### iv. "Missing" Responsive Documents

Finally, plaintiff seeks to undercut Southcom's searches because, in his view, they "failed to produce whole categories of responsive records, and similarly failed, in its supplemental search, to locate responsive documents that were cited, described, or otherwise referred to in the first document production." Pl.'s Opp. at 19. Specifically, plaintiff faults Southcom for not identifying the following documents that plaintiff expected its searches to locate: responsive

19

emails, id.; more than one cable to or from the U.S. Embassy in Tegucigalpa, id.; SitReps[12] on the day of the coup, or the days leading up to it, id. at 20; more than one edition of Headline News,[13] id.; any records from Soto Cano Air Base,[14] where President Zelaya was first taken following the coup, including the "confirmation" of the departure of a "fixed wing aircraft" from the air base "shortly after news of the coup broke," id.; or an AAR following the coup, id. at 21.

An agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist," however, "does not undermine the determination that the agency conducted an adequate search for the requested records." Wilbur, 355 F.3d at 678; SafeCard Servs., 926 F.2d at 1201. Plaintiff's assertion that various records related to his requests must have existed is "simply conjecture" and is "insufficient to justify a finding that the search was inadequate." Media Research Ctr. v. Dep't of Justice, 818 F. Supp. 2d 131, 138 (D.D.C. 2011); see also SafeCard Servs., 926 F.2d at 1201 ("Mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records."). The reasonableness of a search is determined, not by its results, but by the agency's search methodology and the reasonable efforts the agency adopted to find responsive records. See Steinberg, 23 F.3d at 551. Here, Southcom's searches were, on their face, reasonable. The fact that they did not ultimately result in the

---

[12] According to plaintiff, SitReps are prepared by MILGRP and produced daily by the DOD.

[13] According to plaintiff, "Southcom prepares a daily compilation of published articles and commentary – none of it classified – which it calls 'Headline News.'" Pl.'s Opp. at 20.

[14] Plaintiff's assertion that Southcom failed to produce "any primary records from Soto Cano Air" is suspect. Pl.'s Opp. at 20. Southcom avers that, following its first search for responsive records, it did in fact produce reasonably segregable information of numerous primary records from the Air Base, including "five days of air control tower logs from Joint Task Force[-]Bravo, along with a presentation from Joint Task Force-Bravo dated June 28, 2009." Defs.' Reply at 14; Suppl. Vaughn Index, entries for Southcom 221–31; 232–51.

20

identification of some of the documents plaintiff hoped to recover does not undermine the reasonableness of its searches on his behalf.[15]

Further, Southcom specifically instructed its subcomponents to search for the documents the plaintiff believes are missing from the search results. Southcom directed each of the six subcomponents to search its emails for responsive documents. Bloom Decl. ¶¶ 9–10. It instructed its Public Affairs Office – the office that originates Headline News – to provide responsive documents. Suppl. Bloom Decl. ¶ 5. It instructed its Security Cooperation Office – the office that produces SitReps – to provide responsive records, in particular for the time periods in question. Id. And it instructed J2 to locate the AAR plaintiff believes exists even though, according to Southcom, AARs are produced and maintained by the Department of State, and not by Southcom. Id.; see also Defs.' Reply at 13. In all of these instances, Southcom took reasonable measures to find the responsive records plaintiff seeks. That is all the Court need consider in determining whether Southcom met its obligations under FOIA.

Based on the entire record herein, the undersigned finds that, despite plaintiff's disappointment with the search results, Southcom engaged in reasonable efforts to locate documents responsive to plaintiff's FOIA requests. Certainly the plaintiff has not raised "substantial doubt" about the adequacy of the agency's electronic search. Iturralde, 315 F.3d at 314. Accordingly, the undersigned recommends that the Court find Southcom's electronic search adequate.

---

[15] Moreover, it is entirely possible that these documents no longer exist. A requester is only entitled to records that an agency has in fact chosen to create and retain. Yeager v. Drug Enforcement Agency, 678 F.2d 315, 321 (D.C. Cir. 1982). An agency is not required to obtain or regain possession of a record for the sole purpose of satisfying a FOIA request. Yeager, 678 F.2d at 321 (citing Forsham v. Harris, 445 U.S. 169, 186 (1980)); Kissinger v. Reports Comm. for Freedom of the Press, 445 U.S. 136, 152 (1980)).

Plaintiff also challenges the sufficiency of Southcom's manual searches, arguing that its declarations neither identified personnel involved in the searches by name, nor disclosed the instructions given to search personnel. Pl.'s Opp. at 21–23. For many of the same reasons stated previously, plaintiff's argument fails. The standard he seeks to impose on Southcom's manual searches simply does not comport with FOIA case law in this Circuit. In Kidder v. FBI, 517 F. Supp. 2d 17 (D.D.C. 2007), this Court rejected a FOIA petitioner's demand that a federal agency's manual search for responsive documents be found inadequate unless the agency identified the individuals responsible for conducting the searches. Id. at 24 n. 8. As the Court held there, "FOIA does not require the disclosure of the names of or information about agency staff involved in processing FOIA requests." Id.

The only D.C. Circuit precedent plaintiff cites in support of his demand for the disclosure of Southcom's "search protocol" for the manual searches, Safety Research & Strategies, Inc. v. Dep't of Transp., 903 F. Supp. 2d. 1, 7 (D.D.C. 2012), does not sustain his argument. The Court in that case found fault with the federal agency's description of its manual search not because the agency failed to describe its "search protocol," but because it did not identify the search terms that were employed in the manual searches. Id.

Southcom did not make that mistake here. In Major Bloom's declarations, she described who conducted the searches (i.e., the directorates and units under the supervision of Major Bloom and personnel from Southcom's FOIA office); how they conducted the searches (i.e., manually reviewing physical documents for responsive records); where they searched (i.e., in the records systems of the selected directorates and units); and, notably, what they searched for (i.e., the same search terms employed for the electronic search). See Bloom Decl. ¶¶ 10, 12. Thus,

22

Southcom's declarations provide sufficient detail concerning its manual searches to satisfy the requirements of D.C. Circuit FOIA case law. Accordingly, the undersigned recommends that the Court deem those searches adequate.

### 3. Plaintiff's Challenge to the Breadth of Southcom's Searches

Plaintiff also contends that the overall breadth of Southcom's searches was inadequate. Pl.'s Opp. at 23–26. Specifically, plaintiff asserts that Southcom should have searched five other subcomponents in addition to the six it did search: U.S. Army South ("USARSO"), U.S. Navy South ("NAVSO"), U.S. Air Force South ("AFSOUTH"), United States Military Group ("MILGRP"), and National Military Command Center ("NMCC"). Id. at 24–25. Plaintiff also asserts that the record is unclear as to whether Southcom searched seven sub-units of JTF-B, one of the subcomponents that Major Bloom averred was searched twice for records responsive to plaintiff's FOIA requests.[16] Id. at 25.

Again, the Court must analyze plaintiff's contentions under the standard of reasonableness. To meet this standard, the agency must set forth sufficient information in affidavits or declarations to show that its search was reasonably calculated to provide responsive records, and aver that no other record system was likely to produce responsive records. See Oglesby, 920 F.2d at 68. "Although an agency need not search every record system, an 'agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'" Banks v. Dep't of Justice, 700 F. Supp. 2d 9, 15 (D.D.C. 2010) (quoting Oglesby, 920 F.2d at 68). "It is well-settled that if an agency has reason to know that

---

[16] The seven JTF-B sub-units are: Staff Judge Advocate ("CJA"); Army Forces Battalion ("ARFOR"); Joint Security Forces ("JSF"); Medical Element ("MEDEL"); 1st Battalion 228th Aviation Regiment ("1-228th"); 612th Air Base Squadron ("612th"); and Army Support Activity command ("ASA"). Id. at 25.

certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 327 (D.C. Cir. 1999).

Here, in Major Bloom's declarations show that Southcom searched multiple locations that it determined were reasonably likely to have responsive documents. Because Southcom determined that the six selected directorates and units – J2, J3, J5, PAO, SCO, and JTF-B – performed tasks relevant to plaintiff's FOIA requests, Southcom instructed these subcomponents to search for responsive documents using the identified search terms. See Bloom Decl. ¶¶ 8–9. Thus, this is not a case in which the agency searched only one record system despite its knowledge that other components potentially possessed responsive records. Cf. Valencia-Lucena, 180 F.3d at 327 ("[The agency's] failure to search the center it had identified as a likely place where the requested documents might be located clearly raises a genuine issue of material fact as to the adequacy of [the agency's] search."). Further, Major Bloom explained in detail the basis for Southcom's deliberate selection of the six subcomponents to be searched. Bloom Decl. ¶¶ 8–9. She also averred that "[b]ased on a review of the documents located in both sets of searches, [Southcom] determined that no other components of [Southcom] were likely to have information responsive to Plaintiff's FOIA request." Id. ¶ 13. These representations under oath provide the Court with the necessary detail to determine that the searches were reasonable.

Moreover, although USARSO, NAVSO, and AFSOUTH are Southcom subcomponents, each have their own FOIA office. Defs.' Reply at 16; Suppl. Bloom Decl. ¶ 6. According to Southcom, those FOIA offices cannot be tasked through Southcom's FOIA office. Defs.' Reply at 16. Similarly, NMCC is not a component of Southcom. Id. So again, Southcom's FOIA office is not able to direct NMCC to respond to plaintiff's FOIA requests. Id. To attain responsive records from NMCC, plaintiff would have to submit his FOIA request to the Joint

Staff Area of the Pentagon, the component to which NMCC belongs. Id.; Suppl. Bloom Decl. ¶ 6. Plaintiff asserts that Southcom should have searched MILGRP Honduras for responsive records. Pl.'s Opp. at 25. But as the government explains in its reply, MILGRP Honduras is, in fact, another name for SCO, which was searched twice for responsive records at Southcom's direction. Defs.' Reply at 16; Suppl. Bloom Decl. ¶ 5.

Finally, plaintiff contends that Southcom's declarations are deficient because they do not specify which of the seven subcomponents of JTF-B were searched. Pl.'s Opp. at 25–26. Not so. Major Bloom's declarations are sufficiently detailed. She identifies JTF-B as one of the subcomponents charged with responding to plaintiff's FOIA requests, the search terms JTF-B employed in its search, and the specific instructions Southcom provided to JTF-B with respect to its search for responsive records. See Suppl. Bloom Decl. ¶ 5. Nothing further was required. Oglesby, 920 F.2d at 68. The undersigned recommends that this Court find that Southcom's description of the scope of its searches was sufficiently detailed, and that those searches were not deficient with respect to their breadth.

B.    Southcom Appropriately Withheld Responsive Material Based on FOIA Exemptions 1 and 7(E)

Southcom withheld from disclosure pursuant to FOIA Exemptions 1 or 7(E) certain portions of the records it deemed responsive to plaintiff's FOIA requests. Plaintiff's challenges to Southcom's invocation of these two exemptions will be addressed individually below.

1.   FOIA Exemption 1

FOIA Exemption 1 protects from disclosure matters that are: "(A) specifically authorized under criteria established by an Executive [O]rder to be kept secret in the interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to such Executive [O]rder." 5 U.S.C. § 552(b)(1). To support its Exemption 1 redactions, Southcom submitted a

25

Vaughn index and supplemental Vaughn index[17] with descriptions of the withheld or redacted

documents and corresponding explanations as to why the agency found those documents to be

exempt from disclosure.  See Suppl. Vaughn Index.  Southcom also submitted the declarations of

Major Bloom and original classification authority ("OCA")[18] Brigadier General Thomas Geary.

See Bloom Decl.; Suppl. Bloom Decl; Geary Decl.  Plaintiff asserts that Southcom's initial

Vaughn index was inadequate because it provided "scant basis for determining the validity of

any particular withholding," and that its supporting declarations were insufficient because they

were stated in general and conclusory terms.  Pl.'s Opp. at 29.  Further, plaintiff contends that

Southcom excessively redacted the documents it produced and consequently failed to provide all

"reasonably segregable," non-exempt information the documents contained.  Id. at 29–30.

Finally, plaintiff challenges whether Southcom's invocation of Exemption 1 complied with the

procedural requirements of Executive Order 13,526.  Id. at 30.  Each of plaintiff's arguments will

be addressed in turn.

i.        Sufficiency of Defendants' Vaughn Index and Declarations

An agency withholding documents responsive to a FOIA request bears the burden of

proving the applicability of the claimed exemptions.  Miller v. Casey, 730 F.2d 773, 776 (D.C.

Cir. 1976).  FOIA requires an agency in possession of information it considers exempt to provide

the requestor with a description of the nature of the withheld material and as much of an

[17] On September 8, 2014, Judge Ketanji Brown Jackson issued an order requesting that Southcom submit a supplemental Vaughn Index "that – at a minimum – includes a column listing particular bases for redactions for each document."  Sept. 8, 2014, Order.  Pursuant to that Order, Southcom filed a supplemental Vaughn index on September 22, 2014.  See Suppl. Vaughn Index.

[18] An OCA, or original classification authority, is authorized to conduct classification reviews and to classify national security information.  See Exec. Order No. 12,958, 60 Fed. Reg. 19,825, 19,827 § 1.4(a)(2) (Apr. 17, 1995); see also Exec. Order No. 13,292, 68 Fed. Reg. 15,315 (Mar. 25, 2003) (amending, in other respects, Executive Order 12,958).

26

explanation for the agency's non-disclosure as possible "without thwarting the exemption's purpose." King v. Dep't of Justice, 830 F.2d 210, 224 (D.C. Cir. 1987). To meet this burden, federal agencies typically submit an affidavit and a Vaughn index. The adequacy of the Vaughn index is determined, not by its form, but by its function. Its purpose is to restore the normal adversarial balance by forcing the agency to carefully review withheld material as it completes the index, and to provide a court with a useful tool to evaluate and rule on the applicability of the claimed FOIA exemptions. See Keys v. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987). In evaluating the sufficiency of a Vaughn index, the relevant inquiry is whether the index provides the most detailed description possible of the undisclosed material without disclosing confidential and privileged material, specifically identifies the claimed exemptions, and justifies the non-disclosure with sufficient detail to forge "the logical connection between the information [withheld] and the claimed exemption[s]." Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 146 (D.C. Cir. 2006); see also Oglesby, 79 F.3d at 1178; Goldberg v. Dep't of State, 818 F.2d 71, 78 (D.C. Cir. 1987).

In the national security context, however, it is well-established that this Court must conscientiously defer to "the Executive departments responsible for national defense and foreign matters," because the Executive has "unique insights into what adverse effects might occur as a result of public disclosure of a particular classified record." Ctr. for Nat. Sec. Studies v. Dep't of Justice, 331 F.3d 918, 926–27 (D.C. Cir. 2003) (internal quotations omitted); see also Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Because courts "lack the expertise necessary to second-guess such agency opinions in [a] national security FOIA case," the D.C. Circuit has found it unwise to undertake searching judicial review of Exemption 1 claims, and has instructed the district court to "accord substantial weight to an agency's affidavit concerning

27

the details of the classified status of the disputed record." ACLU/DOD, 628 F.3d at 624; Wolf v.

CIA, 473 F.3d 370, 374 (D.C. Cir. 2007).  If an agency's affidavit describes the justifications for

withholding the information "with specific detail," demonstrates that the information withheld

"logically falls within the claimed exemption," and "is not contradicted by contrary evidence in

the record or by evidence of the agency's bad faith," then summary judgment is warranted on the

basis of the affidavit alone.  ACLU/DOD, 628 F.3d at 619.

Southcom's declarations and supplemental Vaughn index plainly meet this deferential

standard.  Indeed, a side-by-side comparison of Southcom's original Vaughn index and its

supplemental Vaughn index serves as an instructive example to agencies of what they should not

submit versus what they should submit to support their non-disclosure arguments under

Exemption 1.  While the original Vaughn index provides, as plaintiff correctly observes, a "scant

basis" for assessing the validity of Southcom's withholdings, see Pl.'s Opp. at 29, the

supplemental Vaughn index provides considerable detail concerning the basis for withholding

the material at issue pursuant to Exemption 1.  For example, page 9 of the supplemental Vaughn

index identifies the document bates-stamped "Southcom 177–220" as a slide presentation

entitled "Mission Analysis-Potential Support to DOS in Honduras" and dated June 01, 2009.

Suppl. Vaughn Index at 9.  The index further states that the material withheld from the document

was properly classified "SECRET" under Sections 1.4(a), (c), and (d) of E.O. 13,526 because it

pertains to:

> military plans, intelligence activities (including special activities),
> intelligence sources, and foreign relations of foreign activities of the
> United States, including confidential sources.  In particular, the
> withheld information pertains to intelligence collections methods,
> human intelligence sources, and the details of a particular foreign
> operation.  The disclosure of this information could be expected to
> cause serious damage to the national security by hindering current
> and future plans and operations and would clearly place in jeopardy

28

the safety of our troops as well [as] our allies. The withheld portions of this document are properly classified pursuant to section 1.4(a), (c), and (d) of Executive Order 13526.

Id. at 9.[19] This description is sufficiently detailed for the Court to determine that the withheld material logically falls within Exemption 1. ACLU/DOD, 628 F.3d at 619. Executive Order 13,526 provides that information that falls within one or more of the categories listed in Section 1.4 of the Order, including "military plans, . . . or operations," "intelligence sources or methods," or "foreign activities of the United States, including confidential sources," may be properly classified. E.O. 13,526 §§ 1.1(a)(3), 1.4(a), (c), (d). Here, the government's Vaughn index demonstrates that the withheld information falls into multiple categories listed in Section 1.4 of the Executive Order, i.e., the withheld information "pertains to intelligence collections methods, human intelligence sources and the details of a particular foreign operation." Suppl. Vaughn Index. at 9. Further, the government's description of the withheld material is not contradicted by any "contrary evidence in the record or by evidence of the agency's bad faith." ACLU/DOD, 628 F.3d at 619. Nothing more needs to be shown.

As this entry is representative of the level of detail contained in the index's other descriptions of the withheld Exemption 1 material, see generally Suppl. Vaughn Index,[20] the undersigned recommends that this Court find the government's description of its Exemption 1

---

[19] The government's invocation of Exemption 1 is further supported by the declaration of General Thomas Geary. Geary Decl. ¶ 2. General Geary is an OCA and the Director of the Intelligence, Surveillance, and Reconnaissance Directorate (J2) at Southcom. Id. Pursuant to E.O. 13,526, General Geary is both qualified and authorized to validate the classification of information for national security purposes and to determine when the declassification of national security information is appropriate. Id. He attests that he reviewed all of the pages of Southcom records responsive to plaintiff's FOIA request and confirmed that "the pages/documents are currently and properly classified, both procedurally and substantively, in accordance with Executive [O]rder 13526, and should remain classified." Id. ¶ 7.

[20] Further, the supplemental Vaughn index provides the Court with the information that was otherwise missing from the more general description of the withheld material in General Geary's declaration. See Judicial Watch v. Dep't of Justice, 800 F. Supp. 2d 202, 213 (D.D.C. 2011) (permitting the agency to use a combined Vaughn index-declaration approach where the supporting documents work in conjunction with one another to meet the agency's burden).

29

withholdings sufficient under this Circuit's deferential standard of review of such claims.  See, e.g., Krikorian v. Dep't of State, 984 F.2d 461, 464 (D.C. Cir. 1993); Military Audit Project, 656 F.2d at 738.

### ii.     Reasonably Segregable Information

Plaintiff also contends that Southcom did not meet its obligation to produce all reasonably segregable non-exempt information from the withheld materials.  Pl.'s Opp. at 29. According to plaintiff, "it is clear . . . that at least some of [the withheld materials] have been far more aggressively redacted than exemption (b)(1) could justify."  Id.  As an example, plaintiff references Southcom's production of a PowerPoint presentation entitled "Mission Analysis: Potential Support to DOS in Honduras," wherein Southcom redacted 17 pages out of the 43-page document.  Id.

The government's obligation to release any "reasonably segregable portion" of otherwise exempt material is, at this point, well defined in the case law.  See Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  A federal agency cannot withhold non-exempt portions unless they are inextricably intertwined with the exempt portions of the document.  Id.; 5 U.S.C. § 552(b).  To assess whether an agency has met its reasonable segregability obligation, the Court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." Juarez v. Dep't of Justice, 518 F.3d 54, 61 (D.C. Cir. 2008).   However, the agency is not required to provide so much detail that the purpose of the FOIA exemption is defeated.  Mead, 566 F.2d at 261.

In Johnson v. Executive Office for the U.S. Attorney's Office, 310 F.3d 771 (D.C. Cir. 2002), for example, the government provided both a comprehensive Vaughn index and a

declaration wherein the declarant averred that despite a "line-by-line review of each document," the agency ultimately determined that non-exempt information was not reasonably segregable. Id. at 776. In that instance, the D.C. Circuit held that the supporting documents sufficiently fulfilled the agency's obligation to show with "reasonable specificity" why certain documents could not be further segregated. Id. The Court was assuaged by the declarant's assurance that the agency conducted a thorough, detailed review of the document to assess whether non-exempt material was reasonably segregable. Id.

The supporting documents in the instant action provide the same reasonable specificity and assurances contained in the affidavits in Johnson. As the supplemental Vaughn index shows, for every document Southcom flagged as exempt from disclosure pursuant to FOIA Exemption 1, an OCA conducted a "line-by-line review of [the] document and all reasonably segregable, non-exempt portions of [the] document [were] released." See generally Suppl. Vaughn Index. Much like the assurances of the declarant in Johnson, General Geary explains in his declaration the agency's process in segregating non-exempt information from exempt documents:

> The [withheld materials][21] have been reviewed line-by-line to identify information exempt from disclosure for which a discretionary waiver of exemption could be applied. In examining all the documents withheld or partially withheld as listed and described in the Vaughn index, every effort was made to segregate releasable material from exempt material. Nevertheless, several situations arose in which portions of this material had to be redacted in its entirety because nonexempt information was intertwined with exempt information. Portions were also withheld in their entirety because the process of redacting exempt information produced a meaningless string of words and phrases. No reasonably segregable, nonexempt portions were withheld.

---

[21] The declaration represents that there 1,019 pages produced pursuant to Plaintiff's FOIA requests. It appears that there were actually a total of 1,082 pages produced. See Pl.'s Facts ¶ 8.

Geary Decl. ¶ 26.  His explanation provides the Court with sufficient detail to explain why certain documents – such as the Mission Analysis PowerPoint presentation that plaintiff references as an example – could not be further segregated and, as a result, had larger portions excised out.

This is not a case where documents were withheld in full.  Only portions of responsive documents were withheld.  See generally Suppl. Vaughn Index.  Indeed, even with respect to the 43-page document about which plaintiff complains, the government released 26 pages with interspersed redactions, demonstrating that Southcom conducted a line-by-line review to ensure that it provided all reasonably segregable information.  See generally Mission Analysis PowerPoint.  Southcom then explained in the supplemental Vaughn index why the withheld portions could not be released.  See Suppl. Vaughn Index at 9, entry Southcom 177–220 ("[A]ll reasonably segregable, non-exempt portions of this document are being released . . . .  [T]he withheld information [pursuant to Exemption 1] pertains to intelligence collection methods, human intelligence sources, and the details of a particular foreign operation.  The disclosure of this information could be expected to cause serious damage to the national security by hindering current and future plans and operations and would clearly place in jeopardy the safety of our troops as well of [sic] our allies.").  Indeed, the government provided similar explanations for each entry in its supplemental Vaughn index.   See generally Suppl. Vaughn Index.

Upon review of Southcom's supplemental Vaughn index in its entirety, the undersigned is satisfied that Southcom has met its burden to provide sufficient information on the withheld portions of documents.  Absent contrary evidence within the record or a showing of bad faith on the part of the agency, the Court has no reason to doubt General Geary's declaration and the supplemental Vaughn index.   Accordingly, the undersigned recommends that the Court find that

the government properly reviewed and redacted the responsive documents containing information exempt from disclosure.

### iii. Procedural Requirements

Plaintiff also challenges, on procedural grounds, the propriety of the classification decisions underlying Southcom's FOIA Exemption 1 claims. Specifically, he contends that Southcom failed to comply with the requirements of E.O. 13,526 Section 1.6, which states that when an agency deems certain information classified, it must, "at the time of the original classification," provide the "identity, by name and position, or by personal identifier, of the original classification authority." Pl.'s Opp. at 30–31 (quoting E.O. 13,526 §§ 1.6(1), (4)). This procedural requirement was not satisfied for at least some of the documents at issue. Id.

The D.C. Circuit recently rejected a similar procedural challenge to an agency's classification decisions pursuant to Section 1.6 of E.O. 13,526. In Judicial Watch, Inc. v. Dep't of Defense, 715 F.3d 937 (D.C. Cir. 2013), as here, the CIA did not name the OCA who first classified the documents at issue, thereby neglecting the procedural requirements of Section 1.6 of E.O. 13,526. Id. at 944. The Court of Appeals held, however, that this procedural defect was cured because the CIA provided a declaration from an individual with original classification authority averring that he had reviewed the documents at issue and concluding that they had been properly classified. Id. at 944. Thus, as long as the agency assures the Court that a person with original classification authority has approved the classification decision, the agency's failure to comply with Section 1.6 of E.O. 13,526 should not "reflect adversely on the agency's overall classification decision." Id. (quoting Lesar v. Dep't of Justice, 636 F.2d 472, 484–85 (D.C. Cir. 1980)). Further, while Section 1.6 requires the agency to disclose the name of the OCA, once the agency failed to comply with this section, the Judicial Watch Court only required that an

33

OCA – and not necessarily a specifically identified and named OCA – corroborate the appropriateness of the classification decision. See id.

Application of Judicial Watch to this case resolves plaintiff's procedural challenge here. In the instant action, General Geary states in his declaration:

> As the J2 Director, I . . . possess the necessary training and have been designated as an original classification authority (OCA) up to the SECRET level pursuant to E.O. 13526, Sections 1.3[ ] and 3.1. I am qualified to validate the classification of information for national security purposes and determine when it is appropriate to declassify national security information pursuant to guidance promulgated by this Agency's original classification authorities in accordance with Executive Order 13526 . . . . I am authorized to assess the current, proper classification criteria of E.O. 13526 and applicable regulations.

Geary Decl. ¶ 2. General Geary then avers that:

> We[22] fully reviewed 1,019 [sic] pages, and confirmed the pages/documents are currently and properly classified, both procedurally and substantively, in accordance with Executive Order 13526, and should remain classified . . .

Id. ¶¶ 2, 7. Similarly, Major Bloom's declaration states that the responsive documents "were reviewed by the appropriate original classification authorities (OCAs) within [Southcom] and by the OCAs of other DOD elements and the other federal agencies who had equities within the documents." Bloom Decl. ¶ 17.

Nothing more is required. Because the government's declarations "clearly indicate that the documents fit within the substantive standards of [the] Executive Order," and remove "any doubt that a person with original classification authority has approved the classification

---

[22] Based on the entirety of General Geary's declaration, as well as the record before this Court, the "we" in paragraph 7 is a reference to not only General Geary, but also the OCAs from the other intelligence agencies that reviewed Southcom's responsive documents prior to document production. See Bloom Decl. at ¶ 17 (responsive documents "were reviewed by the appropriate original classification authorities (OCAs) within [Southcom] and by the OCAs of other DOD elements and the other federal agencies who had equities within the documents.").

decision," any procedural failure relating to an application of the Executive Order does "'not reflect adversely on the agency's classification decision.'" Judicial Watch, 715 F.3d at 944 (quoting Lesar, 636 F.2d at 484).

### 2. FOIA Exemption 7(E)

Also unavailing is plaintiff's challenge to Southcom's redaction of certain documents pursuant to FOIA Exemption 7(E). That exemption shields from disclosure "records or information compiled for law enforcement purposes" to the extent the production of such information:

> would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).

Because Exemption 7(E) facilitates essential law enforcement functions, it is written in broad and general terms to cover not only information that will definitively lead to the circumvention of the law, but also information that risks circumvention of the law. Mayer Brown, LLP v. Internal Revenue Serv., 562 F.3d 1190, 1193 (D.C. Cir. 2009). Satisfying the exemption is a "relatively low bar" in this Circuit. See Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011). The federal agency need not make a "highly specific . . . showing" of risk of circumvention of the law, but only "demonstrate logically how the release of the requested information might create" such a risk. Id. (quoting Mayer Brown, LLP, 562 F.3d at 1193). Nor must the agency demonstrate "an actual or certain risk of circumvention" of the law; rather the agency need only show "the chance of a reasonably expected risk." Mayer Brown, LLP, 562 F.3d at 1194.

Importantly, the range of "law enforcement purposes" covered by Exemption 7(E) includes not only traditional criminal law enforcement duties, but also proactive steps taken by the government designed to prevent terrorism and to maintain national security. See Ctr. for Nat'l Sec. Studies, 331 F.3d at 926. As Justice Alito observed in his concurrence in Milner v. Dep't of the Navy:

> Crime prevention and security measures are critical to effective law enforcement as we know it. There can be no doubt, for example, that the Secret Service acts with a law enforcement purpose when it protects federal officials from attack, even though no investigation may be ongoing. Likewise, steps by law enforcement officers to prevent terrorism surely fulfill "law enforcement purposes." Particularly in recent years, terrorism prevention and national security measures have been recognized as vital to effective law enforcement efforts in our Nation . . . . If crime prevention and security measures do not serve "law enforcement purposes," then those charged with law enforcement responsibilities have little chance of fulfilling their duty to preserve the peace.

562 U.S. 562, 582 (2011) (Alito, J., concurring).

Southcom easily satisfies the "relatively low" Exemption 7(E) standard here. It applied the exemption to withhold portions of documents that concerned the "Force Protection Condition" at SCO in Honduras. Defs.' Mot. at 26; see, e.g., Suppl. Vaughn Index, entries Southcom 47–49; 50–52; 53–55; 56–58; 59–61; 62–64; 65–67; 783–792. According to Southcom, Force Protection Conditions are "set by the various combatant commands . . . and specif[y] the degree of measures that need to be taken in response to terrorist threats to military facilities." Defs.' Mot. at 33. Plainly, as Southcom attests, disclosure of such information could be used by terrorists to thwart the Force Protection Conditions at SCO, thereby risking the very circumvention of the law that Exemption 7(E) was designed to prevent. Accordingly, the

undersigned recommends that this Court deny plaintiff's challenge to Southcom's invocation of Exemption 7(E).

### 3. In Camera Review

Finally, plaintiff argues that the Court should conduct an in camera review of the material withheld pursuant to Exemptions 1 and 7(E) because, in his view, Southcom's invocation of those exemptions is either too sweeping, vaguely justified, or implausible. Pl.'s Opp. at 31–34. The undersigned recommends that plaintiff's request be denied. Though he correctly notes that district court judges have broad discretion in determining whether to conduct an in camera review, the D.C. Circuit has cautioned trial courts against freely conducting such reviews without cause. See, e.g., Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978) ("In camera inspection requires effort and resources and therefore a court should not resort to it routinely on the theory that 'it can't hurt.'"). Indeed, an in camera review is a last resort that is "neither consistent with FOIA nor a wise use of increasingly burdened judicial resources." Mead, 566 F.2d at 262. It is for this reason that the D.C. Circuit requires agencies to present reasonably detailed justifications for non-disclosure in the form of affidavits, a Vaughn index, or both. See Vaughn, 484 F.2d at 827. Congress placed the burden on federal agencies to thoroughly examine documents responsive to FOIA requests and to justify any claimed exemptions. In camera review effectively shifts that burden to the court system, a result Congress did not contemplate when enacting FOIA. Id. at 826.

In this case, an in camera review is unwarranted. As discussed above, Southcom's declarations and supplemental Vaughn index are more than adequate under this Circuit's case law. Furthermore, there is nothing in the record suggestive of bad faith on Southcom's part. If anything, Southcom cooperated considerably with plaintiff by conducting a second search in

response to plaintiff's concerns about the initial document production. See Defs.' Mot. at 2. Thus, the large expenditure of judicial resources that would be required to review in camera the documents at issue[23] is simply unnecessary. Accordingly, the undersigned recommends that the Court decline plaintiff's request that it conduct such a review.

C. Plaintiff's Motion for Leave to File a Sur-reply Should be Denied

The undersigned also recommends that the Court deny plaintiff's motion to file a sur-reply in support of his opposition to defendants' motion for summary judgment. Plaintiff argues in his motion for leave to file the sur-reply that Southcom raised a novel argument in its reply to plaintiff's opposition. Pl.'s Mot. for Leave at 1–2. Specifically, plaintiff contends Southcom argued for the first time in its reply that the Court should disregard the declaration of Daniel Regard, plaintiff's expert in the field of electronic searches, on the ground that "'the reasonableness of an agency's search is not a proper topic for expert testimony.'" Id. at 1 (quoting Defs.' Reply at 7). Southcom counters that plaintiff's motion is improper its reply did not go beyond the scope of issues raised in plaintiff's opposition. Defs.' Opp. at 1.

In general, sur-replies are "disfavored." Glass v. Lahood, 786 F. Supp. 2d 189, 231 (D.D.C. 2011). A court should only permit leave to file a sur-reply if the moving party is otherwise unable to address matters raised for the first time in the non-movant's reply brief. See Ben-Kotel v. Howard Univ., 319 F.3d 532, 536 (D.C. Cir. 2003). But the matter covered in the sur-reply "must truly be new." Pogue v. Diabetes Treatment Centers, 238 F. Supp. 2d 270, 277 (D.D.C. 2002). "Simply put, a sur-reply is not a vehicle for rehashing arguments that have already been raised and briefed by the parties. Were that not true, briefing would become an

---

[23] Plaintiff has not narrowed his request for an in camera review to any particular documents. Southcom has asserted FOIA Exemption 1 with regard to information in 230 documents, and FOIA Exemption 7(E) with regard to information 39 documents.

38

endless pursuit." Crummey v. Social Security Admin., 794 F. Supp. 2d 46, 63 (D.D.C. 2011), aff'd, 2012 WL 556317 (D.C. Cir. Feb. 6, 2012).

Plaintiff has not satisfied that standard here. Southcom's argument in its reply that plaintiff wishes to address in his proposed sur-reply – that this Court need not consider expert testimony to evaluate the adequacy of a FOIA search, see Defs.' Reply at 7 – was neither novel nor unexpected. Indeed, Southcom's argument was a direct response to plaintiff's introduction of a declaration from a purported search expert in his opposition brief. Pl.'s Opp. at 12–14; Regard Decl. Where, as here, arguments raised for the first time in reply "fall 'within the scope of the matters [the party seeking to file a sur-reply] raised in opposition,' and the reply 'does not expand the scope of the issues presented, leave to file a sur-reply will rarely be appropriate.'" Banner Health v. Sebelius, 905 F. Supp. 2d 174, 199 (D.D.C. 2012)) (internal citations omitted). Moreover, plaintiff's proposed sur-reply improperly attempts to bolster arguments already made in his opposition brief. See Pl.'s Proposed Sur-Reply at 5–6 n.3. For both reasons, the undersigned recommends this Court reject plaintiff's attempt to "get the last word," and deny his motion for leave to file a sur-reply.

## IV.   CONCLUSION

For the reasons stated above, the Court recommends that defendants' motion for summary judgment be granted, and that plaintiff's motion for leave to file a sur-reply be denied.

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the Report to which objection is made, and the basis for such

objections.  The parties are further advised that failure to timely file objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).



Dated:  August 14, 2015

_____
G. Michael Harvey
United States Magistrate Judge