**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| INTER-COOPERATIVE EXCHANGE, an Alaska cooperative corporation, *Plaintiff-Appellant,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE; NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION; NATIONAL MARINE FISHERIES SERVICE, *Defendants-Appellees.* | No. 20-35171<br><br>D.C. No. 3:18-cv-00227-TMB<br><br>OPINION |

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, Chief District Judge, Presiding

Argued and Submitted November 8, 2021
Seattle, Washington

Filed June 7, 2022

Before:  Ronald M. Gould, Richard C. Tallman, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay;
Dissent by Judge Tallman

# SUMMARY[*]

**Freedom of Information Act**

The panel reversed the district court's grant of summary judgment to federal defendants in a Freedom of Information Act ("FOIA") action brought by Inter-Cooperative Exchange ("ICE"), a cooperative of fishers who harvest and deliver crab off the coast of Alaska, seeking the government's communications concerning the government's decision not to factor Alaska's minimum wage increase into the arbitration system that sets the price of crab.

The North Pacific Fishery Management Council manages fisheries off the coast of Alaska. In 2005, the National Marine Fisheries Service ("NMFS") implemented a program recommended by the Council to allocate crab resources among harvesters, processors, and coastal communities. As part of this system, an arbitrator established a non-binding price formula. In 2014, Alaska increased the minimum wage, which raised the question of whether costs should be considered under the arbitration system. The Council reviewed the matter at a 2017 meeting where Glen Merrill, an Assistant Regional Administrator of NMFS and a voting member of the Council, introduced an unsuccessful motion to include costs for consideration in the arbitration system. Merrill subsequently exchanged emails with John Sackton, a price-formula arbitrator for the crab arbitration system. ICE filed its FOIA request seeking information behind Merrill's actions. In response, the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

government produced 146 records along with a search log indicating it searched Merrill's emails, network, and desktop, but not his cellphone. The government used three search terms – "binding arbitration," "arbitration," and "crab." Merrill submitted a declaration stating that he did not have a government cellphone, but that he had searched his personal cellphone using the three terms, and had found no responsive records.

The panel held that on the facts here, the three search terms were not reasonably calculated to uncover all documents relevant to ICE's request. ICE contended that the government's choice of search terms was unduly narrow and not reasonably calculated to uncover all documents relevant to its FOIA request. The panel held that the government's choice of search terms was overly narrow. First, the terms completely disregarded half of ICE's FOIA request because they did not include search terms to cover the request for minimum-wage records. Second, the government failed to justify its contention that the two selected keywords – "arbitration" and "crab" – were logical choices to target records related to the interpretation and application of the arbitration system standards, as ICE requested. Third, the government should have considered common variants of its chosen keywords. The panel concluded that the government failed to uphold its obligation to adequately search for records, and was not entitled to summary judgment on ICE's FOIA claim.

ICE also argued that it was unreasonable to allow Merrill to personally search his cellphone by looking for or listening for keywords. The panel held that aside from the use of overly narrow search terms, it agreed with the district court that the government conducted a reasonably adequate search of Merrill's text, social media, and voicemail records.

The panel reversed and remanded for further proceedings consistent with this opinion.

Judge Tallman dissented.  He wrote that the majority failed to acknowledge the limited scope of this appeal.  The question presented was not the overall adequacy of the government's FOIA search of government record systems.  Instead, the sole issue was the validity of the government's search as to Glenn Merrill's cellphone.  And Merrill's personal cellphone – unlike the agency record systems searched – was not likely to contain additional responsive records.  Judge Tallman wrote separately to express his unwillingness to use this narrow case as a broader vehicle to order an invasive search of a government employee's personal cellphone already searched absent any evidence that the new search would reasonably uncover additional relevant documents.

## COUNSEL

Michelle DeLappe (argued), Fox Rothschild LLP, Seattle, Washington, for Plaintiff-Appellant.

Casen B. Ross (argued) and Daniel Tenny, Appellate Staff; Bryan Schroder, United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

Spencer Nathan Thal, Vanguard Law, Poulsbo, Washington, for Amicus Curiae Deep Sea Fisherman's Union of the Pacific.

**OPINION**

BUMATAY, Circuit Judge:

In this case, crab fishers pull their nets from the water and cast them for government documents. Inter-Cooperative Exchange ("ICE"), a cooperative of fishers who harvest and deliver crab off the coast of Alaska, relies on an arbitration system to set the price of crab. After the government decided not to factor Alaska's minimum wage increase into the arbitration system, ICE sought to find out why. It requested the government's communications through the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. FOIA generally compels federal agencies to search for and disclose government records.

In response to ICE's request, the government used three—really two—search terms: "binding arbitration," "arbitration," and "crab." On the facts here, these terms were not reasonably calculated to uncover all documents relevant to ICE's request. We therefore hold the government failed to uphold its obligation to adequately search for records and reverse.

**I.**

Federal law established eight regional fishery management councils to implement fishery management plans to conserve and manage United States coastal fisheries. 16 U.S.C. § 1801 *et seq.*; *see also Oregon Trollers Ass'n v. Gutierrez*, 452 F.3d 1104, 1108 (9th Cir. 2006). The councils run under the auspices of the Secretary of Commerce, through the National Marine Fisheries Service

("NMFS"). [1]  16 U.S.C. § 1801 *et seq.*  The North Pacific Fishery Management Council ("Council") is one of those councils and manages fisheries off the coast of Alaska. 16 U.S.C. § 1852(a)(1)(G).  The Council consists of voting members from both the federal and state levels.  *Id.* § 1852(a)(1)(G), (b).

In 2005, NMFS implemented a program recommended by the Council to allocate crab resources among harvesters, processors, and coastal communities.  50 C.F.R. § 680.20. Because the quota system displaced the traditional market forces that determined prices, the program also established a crab price arbitration system to guide price negotiations and "preserve[] the historical division of revenues in the fishery."  *Id.* § 680.20(g)(2)(ii)(B), (h)(4)(i)(B).  As part of this system, an arbitrator establishes a non-binding price formula to guide negotiations between harvesters and processors, and another arbitrator resolves price disputes. *Id.* § 680.20(g), (h).  ICE was formed a year later to represent the interests of crab fishers.

For years, costs did not inform the price formula.  But in 2014, Alaska increased the minimum wage, and this raised the question of whether costs—the higher wages paid to processor employees—should be considered under the arbitration system.  The Council prepared a discussion paper on the matter and reviewed it at a 2017 meeting.  At the meeting, Glen Merrill, an Assistant Regional Administrator for NMFS and a voting member on the Council, introduced a motion to include costs for consideration in the arbitration system.  The motion failed.  Afterward, John Sackton, a

---

[1] NMFS is now a component of the National Oceanic and Atmospheric Administration ("NOAA").  5 U.S.C. § App. 1 Reorg. Plan 4 1970.

price-formula arbitrator for the crab arbitration system, exchanged emails with Merrill about the effect of the minimum wage increase.  In those emails, Merrill told Sackton that cost information *could* in fact be considered.

To better understand the record and the reasoning behind Merrill's actions, ICE filed a FOIA request with NOAA.  It requested:

> 1) All correspondence to or from Glenn Merrill, Assistant Regional Administrator for the Alaska Region of NMFS, from January 1, 2016 through the present relating to (a) the interpretation and application of the arbitration system standards set forth at 50 C.F.R. § 680.20(g) and/or (b) the Alaska state minimum wage increase approved by voters in November 2014.

> For purposes of this request, the term "correspondence" includes without limitation all emails, text messages, social media messages, voice mails, facsimiles and letters, regardless of whether sent from or received on government or personal devices or transmitted through some other means.

> . . . .

> 2) All documents relating to (a) interpretation and application of the arbitration system standards set forth at 50 C.F.R. § 680.20(g) and/or (b) the Alaska state minimum wage increase approved by voters in November 2014.

> For purposes of this request, the term "documents" includes without limitation all analyses, memoranda, minutes, motions, notes, papers and other records, and all drafts of the same.

Two months later, in response to the FOIA request, NOAA produced 146 records. According to a search log accompanying the production, NOAA searched Merrill's emails, network, and desktop. The search included only three search terms: "binding arbitration," "arbitration," and "crab." The search log did not show that NOAA searched Merrill's cellphone. Nor did the government's response include any of Merrill's text, social media, or voicemail messages. ICE claims that a NOAA attorney also confirmed that the government did not search Merrill's text messages in response to the FOIA request. Unhappy with the search, ICE filed a FOIA administrative appeal.

After receiving no response to the appeal, ICE sued the Department of Commerce, NOAA, and NMFS, claiming that the FOIA search was inadequate. [2] The government moved for summary judgment. The government's motion included a declaration from James Balsiger, Merrill's supervisor. In his declaration, Balsiger explained that although Merrill does not use a government cellphone, Merrill did search his personal cellphone, including his text messages and social media accounts, using the three search terms. Balsiger clarified that it was an "inadvertent error" that the search log suggested that Merrill's phone was not searched.

---

[2] Shortly after ICE filed its complaint, the government provided a letter to ICE denying the administrative appeal.

Merrill also submitted a declaration.  Merrill confirmed that he had no government cellphone, and he only used a personal cellphone.  But he searched his cellphone anyway. Merrill stated that "[ICE's] request sought records concerning the interpretation and application of . . . crab arbitration standards," and based on his understanding of the request, Merrill and NMFS selected the three search terms. Merrill's declaration does not mention any search terms covering ICE's request for records on Alaska's minimum wage.  Merrill then confirmed that he found no responsive documents using the three search terms on his personal cellphone, including on his iMessage, WhatsApp, and Facebook accounts.  Merrill also said that he listened to his voicemails for the search terms and found no responsive messages.

The district court granted the government's motion for summary judgment, finding that the government used reasonably calculated search terms.  The district court was also satisfied that Merrill adequately searched his cellphone and found no responsive records.

ICE now appeals.  We review a district court's grant of summary judgment de novo.  *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988 (9th Cir. 2016) (en banc).

## II.

We've previously underscored the importance of government transparency in "maintaining a functional democratic polity, where the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry out their preferred policies."  *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 769–70 (9th Cir. 2015).  Through FOIA, Congress

established a "judicially enforceable right to secure government information from possibly unwilling official hands." *Id.* at 770 (simplified). So in response to a FOIA request, the government must show beyond material doubt that its search was adequate. *Transgender L. Ctr. v. U.S. Immigr. & Customs Enf't*, —F.4th —, 2022 WL 1494722, at *4 (9th Cir. 2022). An adequate search is one that is "reasonably calculated to uncover all relevant documents." *Hamdan*, 797 F.3d at 770 (simplified).

The adequacy of the search is a core aspect of the government's duty under FOIA. We measure this adequacy "by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Hum. Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995). It doesn't matter "whether there might exist any other documents possibly responsive to the request," as long as the search for documents was otherwise adequate. *Hamdan*, 797 F.3d at 770–71 (simplified). A search is not inadequate just because it fails to turn up a "few isolated documents." *Id.* at 771 (simplified). But the "heavy burden" of proving adequacy always remains with the government. *Transgender L. Ctr.*, 2022 WL 1494722, at *4; 5 U.S.C. § 552(a)(4)(B). The government may meet this burden by providing "reasonably detailed, nonconclusory affidavits submitted in good faith." *Hamdan*, 797 F.3d at 770 (simplified).

ICE makes several arguments on appeal. First, ICE argues that NOAA's chosen search terms were not reasonably calculated to uncover all responsive documents. Second, ICE asserts that the search of NOAA Assistant Director Merrill's cellphone for text, social media, and voicemail messages was inadequate. We agree with ICE that NOAA's search terms here were insufficient and reverse.

But on ICE's second contention, we conclude that the search of Merrill's cellphone complied with NOAA's duty under FOIA.

## A.

ICE contends that NOAA's choice of search terms was unduly narrow and not reasonably calculated to uncover all documents relevant to its FOIA request. ICE sought records related to two subjects: (a) "[crab] arbitration system standards" and/or (b) "the Alaska state minimum wage increase." In response, NOAA selected three search terms: "binding arbitration," "arbitration," and "crab." But common sense tells us that the government only really selected two search terms since "binding arbitration" is subsumed by "arbitration." The question is whether the government has shown beyond material doubt that these two search terms were reasonably calculated to uncover *all* responsive documents on the two topics requested by ICE. If not, NOAA hasn't lived up to its FOIA obligations.

Determining the adequacy of the government's search terms is critical to evaluating the government's compliance with FOIA. *See Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 404 (D.C. Cir. 2017). In general, government agencies have discretion in crafting search terms designed to identify responsive records. *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015). That's because government agencies are ordinarily in the best position to select terms using their "unique knowledge of the manner in which they keep their own files and the vocabulary they use." *Anguiano v. U.S. Immigr. & Customs Enf't*, 356 F. Supp. 3d 917, 921 (N.D. Cal. 2018) (simplified). For this reason, a FOIA requester "cannot dictate the search terms for his or her FOIA request." *Bigwood*, 132 F. Supp. 3d at 140.

Even so, the government's discretion to formulate search terms "is not boundless." *New Orleans Workers' Ctr. for Racial Just. v. U.S. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 45 (D.D.C. 2019) (simplified).  The choice of search terms must be both practical and grounded in common sense. *See Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 363 (4th Cir. 2009).  Government agencies, like all bureaucracies, often use jargon, acronyms, shorthand, and common variants of terms.  And when a FOIA request arrives at the agency's doorstep, it may need to keep that in mind when devising search terms.  *See Government Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 11–12 (D.D.C. 2018) (ruling that "FOIA requests are not a game of Battleship" and that the government fails its FOIA obligations when it ignores "logical variations," "synonyms," and "proxies" "calculated to turn up all responsive documents").  That, of course, does not mean that every conceivable term, variant, or misspelling must be considered by an agency, as FOIA requestors are only "entitled to a reasonable search for records, not a perfect one." *Hamdan*, 797 F.3d at 772.

The test is one of reasonableness.  On a challenge to the adequacy of selected search terms, the government needs to "back[] up" its assertion that the terms chosen were reasonable. *Transgender L. Ctr.*, 2022 WL 1494722, at *4; *cf. Am. Ctr. for Equitable Treatment, Inc. v. Off. of Mgmt. & Budget*, 281 F. Supp. 3d 144, 152 (D.D.C. 2017) (ruling that a government agency had to explain why it refused to use "terms that are common in practice").  In the end, if based on the circumstances of a particular case, the government's chosen terms are not "reasonably calculated to uncover all relevant documents," *Hamdan*, 797 F.3d at 770 (simplified), then the government has not fulfilled its duties under FOIA.

Two cases from our sister circuits illustrate our approach.  In *DiBacco v. U.S. Army*, the D.C. Circuit found a search adequate when the government used a "variety of keywords" and included "common misspellings" of various codenames and pseudonyms.  795 F.3d 178, 190–91 (D.C. Cir. 2015).  Given the adequacy of the search terms, it did not matter that the government omitted two requested terms because it "need not knock down every search design advanced by every requester."  *Id.* at 191.

And in *Rein*, the Fourth Circuit evaluated the adequacy of a government search that used over 40 keywords consisting of terms found in the FOIA request, "additional related words or phrases" designed to produce responsive records, "isolated terms" like acronyms, and "alternate spellings."  553 F.3d at 360 & n.11.  The government agency there also instructed its employees that the list of keywords was not "all-inclusive" and that the search should not be limited to only those terms.  *Id.* at 360.  Based on the comprehensive manner of the search, the Fourth Circuit found the government met its FOIA obligation, even if the search did not produce all responsive documents.  *Id.* at 362–64. [3]

Given this background, ICE claims NOAA's search terms were inadequate for three reasons: (1) the terms did not cover the part of the FOIA request related to the Alaska minimum wage; (2) the two search terms did not encompass the broad request for records relating to the crab arbitration

---

[3] The government's response to a FOIA request is context specific, *see Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990), and we do not mean to suggest that the government must take all the actions it took in *Rein* to satisfy its FOIA duty in every case.  But the government must take a wide-eyed approach to crafting its search terms.  And, of course, *Rein* is a fine example of the government doing so.

system; and (3) the terms did not account for related variants and shorthand terms. We agree that NOAA's choice of search terms was overly narrow.

First, the terms completely disregarded half of ICE's FOIA request. ICE sought records not just on "[crab] arbitration system standards," but also for records related to the "Alaska state minimum wage increase"—either conjunctively or disjunctively with records about the arbitration system. Yet, it's clear that the two keywords— "crab" and "arbitration"—were not designed to generate records related to the minimum wage. And Merrill's declaration confirms that. In his declaration, Merrill states that the keywords were developed in response to ICE's request for crab-arbitration records. He never mentioned devising search terms to cover the request for minimum-wage records.

And we don't accept NOAA's explanation on appeal for the lack of any minimum-wage search terms. It states that it didn't craft search terms independently tailored to the minimum-wage request because that topic was only a "policy concern" for the Council "by virtue of the crab price arbitration regulations." That might be true, but NOAA presented no evidence to support that claim. In their declarations, neither Merrill nor his supervisor, Balsiger, pointed to the overlap between the two subjects as the reason why no minimum-wage search terms were used. Instead, Merrill merely noted that the two search terms "reflected the specific parameters of [ICE's] FOIA request." That's incorrect because the parameters of ICE's request included minimum-wage records. While we grant the government leeway in developing keywords, it's unreasonable to suggest, without supporting evidence, that the terms "crab" and "arbitration" would uncover all records related to the

minimum-wage increase.   Put differently, by using only those two search terms, the government did not take a practical or common-sense approach to ICE's request.

Second, NOAA failed to justify its contention that the two selected keywords were logical choices to target records related to the "interpretation and application of the arbitration system standards," as ICE requested.   The declarations by Merrill and Balsiger do not explain why the two search terms would adequately cover the seemingly broad subject of crab arbitration standards.   As we've said, an agency's affidavit purporting to show the adequacy of a search must be "reasonably detailed" and "nonconclusory." *Hamdan*, 797 F.3d at 770.   Merrill and Balsiger's declarations fall short of this standard.

Indeed, the record shows that the two keywords were absent from a key email that Merrill sent to Sackton, the price-formula arbitrator, about the effect of the Alaska minimum wage increase on the arbitration system.   Rather than using NOAA's keywords, Merrill used other terms such as "cost," "non-binding price formula," and "arbitrator" to discuss the subject. [4]   And although we have said that a search is not inadequate if it fails to turn up a "single document," it may be the case that "a review of the record raises substantial doubt [about the adequacy of the government's search], particularly in view of well-defined requests and positive indications of overlooked materials." *Id.* at 771 (simplified); *see also Transgender L. Ctr.*, 2022 WL 1494722, at *5.   That Merrill's substantive response

---

[4]   To be fair, Sackton used both keywords—"crab" and "arbitration"—in his initial email to Merrill.   But Merrill's long and substantive response shows that NOAA used different key terms than the agency's search terms to discuss the crab arbitration matter.

about the crab arbitration system would have escaped the use of the two search terms "raises substantial doubt" here. *Id.*

Third, we agree with ICE that NOAA should have considered common variants of its chosen keywords. NOAA used the keyword "arbitration," but its search didn't encompass closely related variants, such as "arbitrator" or "arbitrating."  NOAA's duty to consider variants was particularly important here since ICE asked for and NOAA agreed to a search of Merrill's text messages and social media. Such communications often use "informal [language] and contain typographical errors, shorthand, symbols, and abbreviations." *United States v. Dhingra*, 371 F.3d 557, 559 n.3 (9th Cir. 2004).  For example, ICE suggests, and we find plausible, that "arb" would be a common, text-message shorthand for "arbitration."  So NOAA should've explained why it didn't consider text-friendly variants of "arbitration." [5]

In sum, we hold that the search terms selected here were too narrow.  We thus cannot say that NOAA has met its burden to show adequacy beyond material doubt.  NOAA then was not entitled to summary judgment on ICE's FOIA claim.[6]

---

[5] Our dissenting colleague finds it "remarkable" to suggest that a search of a cellphone may require a "broader set of terms" than a search of an email or computer system.  Dissent 26.  We disagree.  It's just the reality of how people communicate these days.  People simply don't use the same formalities and conventions over cellphones as they do with computers and emails, and we think FOIA obligations should keep up with those realities.

[6] Our dissenting colleague agrees that NOAA's search terms here were "arguably narrow," but excuses any deficiency because the

**B.**

ICE also challenges the specific way in which Merrill's cellphone was searched for text messages, social media records, and voicemail recordings.  ICE argues that it was unreasonable to allow Merrill to personally search his cellphone by looking for or listening for keywords.  On this ground, we agree with NOAA that the government's search method was reasonable.

FOIA requestors are "entitled to a reasonable search for records, not a perfect one." *Hamdan*, 797 F.3d at 772.  FOIA requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise." *Johnson v. Exec. Off. for U.S. Atty.'s*, 310 F.3d 771, 776

---

government didn't need to search Merrill's cellphone "at all." Dissent 19–21.    In the dissent's view, the government only "gratuitously" searched Merrill's cellphone and so "no matter how perfunctory" the search, we must hold it adequate as a matter of law. *Id.* at 23, 26–27.  There's several problems with that view.  First, we are not factfinders.  And the district court never made a factual determination that Merrill's cellphone did not need to be searched.   Indeed, the government's own declaration suggests otherwise.  Balsiger asserted that the government searched "all of Merrill's correspondence, as the term is defined in [the] FOIA request," which included Merrill's cellphone communications, and that "the search was calculated to uncover all relevant documents."  So, at least in litigating this case in the district court, NOAA appeared to concede that the search of Merrill's cellphone was necessary.  Second, the government never asked us to affirm on this basis.  The dissent is the first to raise this novel theory for affirmance.  While we may affirm on any ground, it would be unfair to ICE to do so because it never had a chance to respond to such an argument.  Third, we are aware of no principle of law or any caselaw supporting the dissent's view that the government can agree to search a device, conduct an inadequate search, and then claim some immunity under FOIA after being called out for the inadequacy of its search.  We decline to adopt that rule here.

(D.C. Cir. 2002). Once we are satisfied that the government's search terms are reasonably calculated to uncover all responsive documents, we do not "micro manage" the government's search. *Id.* We thus generally leave it to the government to determine which agency employees have a "close nexus" to a requested record to perform a reasonable search for records. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 328 (D.C. Cir. 1999).

Aside from the use of overly narrow search terms as discussed above, we agree with the district court that NOAA conducted a reasonably adequate search of Merrill's text, social media, and voicemail messages. While it is true that NOAA's initial search log did not mention a search of Merrill's cellphone, the declaration of his supervisor, Balsiger, explained that the omission was "an inadvertent error." Merrill confirmed that he searched his personal cellphone for responsive records. In his declaration, Merrill stated that, to his recollection, he did not use his personal cellphone for government business; but he searched his text messages and his Facebook accounts for responsive records using the keywords and found no records. He submitted that he had no other social media accounts except for WhatsApp, which he rarely used and didn't contain any responsive records. He also stated that he listened to voicemails on his phone for the search terms and did not identify any responsive recordings.

Given the reasonably detailed factual recitation of the search of Merrill's cellphone, ICE hasn't provided a persuasive reason to doubt NOAA's "good faith" explanation of the adequacy of the search. *Hamdan*, 797 F.3d at 770. Aside from the overly restricted search terms, we conclude that NOAA's method of searching

Merrill's cellphone was "reasonably calculated to uncover all relevant documents." *Id.* (simplified).[7]

## III.

NOAA fell short of its FOIA obligation to craft search terms reasonably calculated to uncover all records relevant to ICE's request. The grant of summary judgment in the government's favor was thus improper. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

TALLMAN, Circuit Judge, dissenting:

The majority concludes that the government did not satisfy its burden under FOIA because the three search terms used—"binding arbitration," "arbitration," and "crab"— were not reasonably adequate to uncover all official documents related to ICE's FOIA request for agency records regarding arbitration over crab prices. While it is true that these three terms were arguably narrow, the majority fails to acknowledge the limited scope of this appeal. The question presented to us here is not the overall adequacy of the government's FOIA search of NOAA record systems. Instead, the sole issue raised in this appeal is the validity of

---

[7] Our dissenting colleague unfairly characterizes our ruling as ordering "an invasive search of a government employee's personal cellphone." Dissent 20. On remand, if the district court orders a new search, we see no problem with Merrill again personally searching his cellphone using adequate search terms. We fail to see how this amounts to "an invasive" search, especially since Merrill was already required to conduct a similar search.

the government's search as to Glenn Merrill's personal cellphone.  And Merrill's personal cellphone—unlike the agency record systems searched—was not likely to contain additional responsive records.

I therefore write separately to express my unwillingness to use this narrow case as a broader vehicle to order an invasive search of a government employee's personal cellphone already searched absent any evidence that the new search would reasonably uncover additional relevant documents.  This is particularly so when the employee voluntarily searched his personal text, voicemail, and social media messages, and attests that he found none addressing the subject.  The district court understood the distinction and properly granted summary judgment to NOAA.

When complying with FOIA obligations, "[t]here is no requirement that an agency search every record system." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Instead, "[a]n agency need only search files that are likely to contain responsive records." *Jenkins v. U.S. Dep't of Just.*, 263 F. Supp. 3d 231, 235 (D.D.C. 2017) (citing *Oglesby*, 920 F.2d at 68).  Put differently, where, as here, the government demonstrates the unlikelihood of the existence of any responsive records on a particular record system, the agency is not required to conduct a search of that system at all.  *Id.*

Here, the government's affidavits show that Merrill's cellphone was not reasonably likely to contain responsive records.  *See Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 770 (9th Cir. 2015) ("An agency can demonstrate the adequacy of its search through reasonably detailed, nonconclusory affidavits submitted in good faith." (simplified)).  Merrill swears that he did not use his personal cellphone for government business.  For example, Merrill

avows that "[t]o [his] recollection" any texts sent or received on his cellphone during the relevant time period "were personal." Merrill also declares that while his cellphone contained a private "Facebook account," he did not have other social media accounts (i.e., Instagram, LinkedIn, Twitter) except for WhatsApp, which he rarely used and which contained no responsive records.[1] ICE offers no evidence to challenge Merrill's declaration.[2]

Given the government's proffered affidavit, it is clear beyond cavil that Merrill's personal cellphone was unlikely to contain records responsive to ICE's FOIA request. "Where the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all." *Reyes v. U.S. Env't. Prot. Agency*, 991 F. Supp. 2d 20, 27 (D.D.C. 2014) (simplified). That principle applies here. Merrill's declaration establishes

---

[1] While Merrill did not state that he never used his personal cellphone to make government-related telephone calls, his affidavit stated that he searched the "voicemail inbox on [his] personal phone and listened through the messages," but "found no responsive records." Since Merrill listened to the content of each and every voicemail, the narrowness of the search terms used are immaterial to the voicemail search because all messages were reviewed without reliance on the terms.

[2] ICE argues that responsive documents might be found on Merrill's cellphone because Merrill exchanged texts with a colleague and Council member during Council meetings that they both attended in 2018. But there is no evidence that these messages were related to government business. Merrill stated any texts sent or received "were personal," and it is unsurprising that colleagues who convene for meetings would send personal text messages to each other around the time of those meetings. ICE's "purely speculative claims about the existence and discoverability of other documents," *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 74 (D.C. Cir. 2018) (citation and quotation omitted), therefore cannot rebut the law's presumption of good faith.

that another search of his personal cellphone for government records would prove futile.  The reasonable search therefore required by FOIA was no search at all.  *See Hunton & Williams LLP v. U.S. Env't Prot. Agency*, 248 F. Supp. 3d 220, 238 (D.D.C. 2017) (finding a plaintiff was not entitled to a FOIA search of government employees' text messages when the plaintiff did not "point to any evidence indicating that text messages were used for agency business or otherwise show that searching text messages would be likely to lead to responsive documents").

The government was also not required to perform a search of Merrill's personal cellphone for a second, independent reason.  Merrill avows that he was fully aware that agency policy required him to copy or forward any message related to government business sent or received from his personal device to his official agency email account.  "Absent evidence to the contrary, a government employee is presumed to have properly discharged the duty to forward official business communications from a personal . . . account to an official email account." *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 319 F. Supp. 3d 431, 437–38 (D.D.C. 2018).  ICE has presented no genuine evidence to raise a question of Merrill's compliance with his recordkeeping obligations, so the presumption applies here.  *See id.*; *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just.*, 377 F. Supp. 3d 428, 435–36 (S.D.N.Y. 2019).

Merrill's declaration therefore establishes that the records on his personal cellphone, if any, would have been duplicative of records already within his official email account. *Jud. Watch, Inc.*, 319 F. Supp. 3d at 438.  It makes little sense to hold that the government is required to search again a record system—much less a government employee's

private cellphone—when there is no reason to believe that previously undisclosed records would be found there.

Because no search was required of Merrill's personal cellphone, it logically follows that the government's search of Merrill's cellphone—no matter how perfunctory—was per se adequate.  Although the government was not required to search Merrill's personal cellphone, it nevertheless chose to do so.  ICE may well make a strong case that the three search terms employed were inadequate for a search of other record systems, say, for example, Merrill's government email, computer network, and desktop.  But here ICE has only challenged the search of Merrill's personal cellphone.  Even if the search terms the government chose to employ were unduly narrow in other contexts, those terms were necessarily broader than employing no search terms at all.  Accordingly, we should affirm the district court and hold that the government's FOIA search was adequate as a matter of law.  *See Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007). ("We may affirm on any basis supported by the record, whether or not relied upon by the district court.").

A contrary holding runs the risk of undermining the fundamental purpose of FOIA—"to facilitate public access to government documents."  *Hamdan*, 797 F.3d at 770 (simplified).  Instead of quickly searching systems unlikely to contain responsive records out of an abundance of caution, agencies may completely forego a search of these systems because, if they did perform a search, they would be forced to either expend additional resources or face litigation.[3]  This

---

[3] Despite receiving partial fees for performing a search, agencies nevertheless expend considerable resources in complying with their FOIA obligations.  *Cf.* Antonin Scalia, *The Freedom of Information Act*

may lead to even fewer records systems being searched and even less information being turned over to the public.

The majority rejects this approach, suggesting it espouses a novel legal principle that was not supported by the district court's findings or specifically argued by the government. While there is nothing novel about a formulation of the law which "follows logically from prior cases," *Perveler v. Estelle*, 974 F.2d 1132, 1134 (9th Cir. 1992), nor anything inappropriate about applying the law to the factual record, the Court nevertheless should still affirm on the basis that the three search terms "binding arbitration," "arbitration," and "crab" were adequate.

The majority argues that the government was required to employ natural derivatives to the search terms to keep up with the "realities" of how people communicate, Maj. Opin. at 16 n.5, and was also required to use search terms explicitly responsive to both aspects of ICE's FOIA request. But based on these facts and the narrow issue presented, I disagree.

"In determining whether an agency's search is reasonable, a court must consider the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives." *Davis v. Dep't of Just.*, 460 F.3d 92, 105 (D.C. Cir. 2006). Each factor here falls in the government's favor.

First, as discussed above, Merrill's cellphone was not likely to "yield the sought-after information," *id.*, because

---

*Has No Clothes*, REGULATION, Mar.–Apr. 1982, at 16–17. This is because, by its design, FOIA does not fully compensate agencies for the costs they incur in fulfilling requests. *See, e.g.*, 5 U.S.C. § 552(a)(4)(A)(iv) ("Fee schedules shall provide for the recovery of *only* the direct costs of search, duplication, or review." (emphasis added)).

Merrill swears that he did not use his personal cellphone for government business. Second, "readily available alternatives" existed for the government's search. *Id.* As already mentioned, ICE failed to rebut the presumption that Merrill "properly discharged [his] duty to forward official business communications . . . to an official email account." *Jud. Watch, Inc.*, 319 F. Supp. 3d at 437–38. We must therefore presume any relevant documents on Merrill's cellphone would also exist on his official government email account. Finally, there is no support in the record or common sense that a search of Merrill's government email would be more burdensome than a search of his private texts, voicemails, and social media messages.

Moreover, the terms "binding arbitration," "arbitration," and "crab" are the most common words that would be likely to appear in correspondence regarding the interpretation and application of the crab price arbitration system standards. And they were sufficiently responsive to both aspects of ICE's FOIA request given that the state's minimum wage increase was a policy concern for the North Pacific Fishery Management Council only because of the crab price arbitration regulations. *Cf. Edelman v. SEC*, 172 F. Supp. 3d 133, 147 (D.D.C. 2016) (finding that "in light of the overlap between [two] subcomponents" of a plaintiff's FOIA request, "there is no reason to believe that the [agency's] *overall* search for responsive material would not have identified any material responsive to [both] subcomponent[s]"). Given the foregoing, we should hold the terms "binding arbitration," "arbitration," and "crab" were adequate to search a government employee's personal cellphone, especially when any responsive records on that phone would also be found on the employee's official government email. *See Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 834

(D.C. Cir. 1979) ("[T]he competence of any records-search is a matter dependent upon the circumstances of the case").

To be sure, this would be a much different case if ICE had challenged the use of these search terms as they relate to the search of other record systems, like Merrill's email, computer network, and desktop. These record systems were used for official government business and, therefore, were highly likely to contain records responsive to ICE's FOIA request.[4] Given the high likelihood of responsive records on these agency systems, the bar for a reasonable search would be set much higher. But ICE did not challenge the use of the search terms as to these other record systems. And it is remarkable to suggest on these facts that a broader set of terms is necessary to search a personal cellphone than was used to search official government files.

In sum, the government in this case was not required to perform a search of Merrill's cellphone. But it gratuitously

---

[4] The majority emphasizes the fact that the terms "crab" and "arbitration" were noticeably absent from an email that Merrill sent to John Sackton, the crab system arbitrator, about the effect of the Alaska minimum wage increase on the arbitration system. Maj. Opin. at 15–16. Granted, "indications that the agencies' initial production was lacking many significant documents within their possession" may show the government's search was inadequate. *Transgender L. Ctr. v. Immigr. & Customs Enf't*, —F.4th — (9th Cir. 2022). But the missing document the majority emphasizes came from Merrill's official government email. And unlike his email messages, no evidence in the record suggests that Merrill used text or social media messages to conduct official government business. *See Hunton & Williams LLP*, 248 F. Supp. 3d at 238. That the search terms used were inadequate to search Merrill's government email cannot prove they were inadequate to search his personal cellphone, especially after he had already gone through his phone and could find nothing relevant to crab price arbitration or state minimum wage increases.

chose to do so.  Even if the search terms the government employed were narrow in other contexts, they were sufficient to probe a government employee's personal cellphone and were necessarily broader than no search terms at all.  "FOIA . . . is hardly an area in which the courts should attempt to micro manage the executive branch."  *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002).  This is particularly true where the majority ultimately concludes "that NOAA's method of searching Merrill's cellphone was 'reasonably calculated to uncover all relevant documents.'"  Maj. Opin. at 18–19.  ICE dropped its crab pots into NOAA records.  But it laid them in the wrong spot.  When the pots were finally pulled from the water, they came up empty.  So where's the crab?

I respectfully dissent from Part II.A of the majority opinion and would affirm the district court's entry of summary judgment for the government.