NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 20 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIONAL PUBLIC RADIO; GRAHAM SMITH, Plaintiffs-Appellants, v. UNITED STATES CENTRAL COMMAND; UNITED STATES DEPARTMENT OF DEFENSE, Defendants-Appellees. | No.   23-55062 D.C. No. 3:21-cv-01079-MMA-AHG MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted February 13, 2024
Pasadena, California

Before: CALLAHAN and IKUTA, Circuit Judges, and LASNIK,[**] District Judge.
Partial dissent by Judge IKUTA.

National Public Radio and Graham Smith (collectively referred to here as

"NPR") appeal the district court's final judgment in favor of the United States

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

--

Central Command and the United States Department of Defense (collectively referred to here as "CENTCOM"), granting CENTCOM's motion for summary judgment, and denying NPR's cross-motion for summary judgment in NPR's suit under the Freedom of Information Act ("FOIA"). We have jurisdiction under 28 U.S.C. § 1291.

FOIA requires government agencies to produce "agency records" when requested by the public. 5 U.S.C. § 552. NPR submitted a FOIA request for documents related a 2004 friendly-fire incident during the Iraq War that resulted in the death of two Marines and an Iraqi civilian interpreter, as well as numerous casualties. "[I]n response to a FOIA request, the government must show beyond material doubt that its search was adequate." *Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 910 (9th Cir. 2022). An adequate search is one that is "reasonably calculated to uncover all relevant documents." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022) (quotations omitted). A FOIA requestor can provide countervailing evidence to show a search was inadequate. *Hamdan v. U.S. Dept. of Just.*, 797 F.3d 759, 771 (9th Cir. 2015). If review of the record raises substantial doubt as to the adequacy of the search, summary judgment is inappropriate. *See id.*; *Reps. Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017).

1.      CENTCOM provided reasonably detailed, nonconclusory declarations

(the Guzman Declarations), which we presume to be in good faith. *Hamdan*, 797 F.3d at 770. These declarations stated that the Secret Internet Protocol Router Network ("SIPR") Content Manager ("CM") was the location where responsive records were most likely to be found, and that "[t]here are no other databases which would likely contain responsive records." CENTCOM's search of SIPR resulted in release of the 85-page report of the Judge Advocate General ("JAG") ("JAGMAN Report"). However, the record contains "positive indications of overlooked materials," and the JAGMAN Report indicates that a search of another record system might uncover documents sought. *Transgender L. Ctr.*, 46 F.4th at 780; *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (agencies must "follow through on obvious leads to discover requested documents").

NPR points to two clear leads that justify looking in other locations: (1) the Central Joint Task Force-7 ("CJTF-7") Report, and (2) the Personnel Casualty Reports ("PCRs"). The 85-page JAGMAN Report released by CENTCOM shows that shortly after the friendly-fire incident, CENTCOM ordered the CJTF-7 to conduct a broader independent investigation and deliver a report with its findings. Despite CENTCOM's arguments that the CJTF-7 Report is the JAGMAN Report, the record indicates the two reports were ordered through separate directives, on separate days, with different deadlines, to be conducted by different officials, and

to cover different component commands. The JAGMAN Report additionally references specific PCRs, and NPR provided proof these documents exist as they were produced in another case. CENTCOM does not dispute the existence of the PCRs, or that the Marine Corps would typically send finalized PCRs to CENTCOM.

NPR provided a 2007 Marine Inspector General Report ("IG Report") and a declaration from Thomas Wagoner ("Wagoner Declaration"), a former Judge Advocate with twenty years of experience, including leading a friendly-fire investigation during the Iraq War. These documents reference multiple categories of routinely created documents in JAG investigations of similar incidents, none of which were produced by CENTCOM's search. In addition to PCRs, Wagoner references, *inter alia*, Serious Incident Reports and records related to condolence payments to the Iraqi interpreter who was killed. The Wagoner Declaration further explains that the Nonclassified Internet Protocol Router Network ("NIPR")— not SIPR—would likely have been used for transmission or sharing of certain documents like PCRs given the need to reach a wider group of recipients who may not have SIPR credentials. NPR submitted documents showing that, in addition to emails (which the Guzman Declaration states CENTCOM would not have retained per their retention policy), NIPR allows transmittal of documents through "shared

drives" and "portals."[1] The Guzman Declaration recognizes that CENTCOM maintains possession of records that relate to friendly-fire incidents, regardless of which service component initially created the record. The Guzman Declaration is silent as to NIPR.

Although failure to produce specific documents in some cases has been found insufficient to deem a search inadequate, "[i]n certain circumstances, a court may place significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). While an agency is not required "to account for documents which the requester has in some way identified," it is required to at least pursue "a diligent search for those documents in the places in which they might be expected to be found." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009) (quotations omitted); *Transgender L. Ctr.*, 46 F.4th at 781. Here, NPR points to types of documents that were likely created to investigate one of the worst friendly-fire incidents in Marine Corps' modern history. Given the evidence in the record of overlooked materials, Guzman's statement that SIPR CM "is the location responsive records from Iraq

---

[1] NPR's request for judicial notice (Dkt. 16) is granted. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001); Fed. R. Evid. 201(b) (courts can take judicial notice of any fact or matter "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

during the time period requested would most likely be" leaves substantial doubt as to the adequacy of CENTCOM's search. *Iturralde*, 315 F.3d at 314 (quoting *Valencia-Lucena*, 180 F.3d at 326).

2.      NPR has not shown that CENTCOM was required to search physical locations or records from the U.S. Marine Corps Forces, Central Command ("MARCENT"). The Guzman Declarations explain that CENTCOM does not maintain service component records (such as MARCENT) unless they are joint records stored on SIPR CM. NPR did not produce any evidence that CENTCOM otherwise has possession or control of MARCENT records, and therefore they are not "agency records" within the meaning of FOIA. *See Rojas v. Fed. Aviation Admin.*, 989 F.3d 666, 677 (9th Cir. 2021). Similarly, NPR has not raised substantial doubt as to CENTCOM's obligation to search physical locations. NPR has not presented any information that undermines the statements made in the Guzman Declarations that all responsive records were digitized. The Wagoner Declaration does not demonstrate any specific knowledge of how CENTCOM currently handles physical documents.

3.      Because the record raises substantial doubt as to the adequacy of CENTCOM's search as it relates to NIPR, the district court erred in granting summary judgment. Therefore, we **REVERSE** the district court's grant of summary judgment to the extent it found NPR was not required to perform

6

additional searches or search NIPR. We **AFFIRM** the district court's grant of

summary judgment as it relates to physical locations and MARCENT records.

*National Public Radio v. United States Central Command*, No. 23-55062

IKUTA, Circuit Judge, dissenting in part:

The majority concedes that "CENTCOM provided reasonably detailed, nonconclusory declarations (the Guzman Declarations) which we presume to be in good faith." Majority at 2–3. The majority also concedes that the declarations stated that Secret Internet Protocol Router Network (SIPR) "was the location where responsive records were most likely to be found" and "[t]here are no other databases which would likely contain responsive records." Majority at 3. This should be the beginning and end of our analysis, because it establishes that CENTCOM met its burden of showing that its search for records in response to NPR's FOIA request was adequate beyond a material doubt.

The majority's claim that CENTCOM's search was inadequate because it did not search the Nonclassfied Internet Protocol Router Network (NIPR) does not withstand scrutiny.[1] The basis for the majority's claim is that CENTCOM's search of SIPR did not produce a Central Joint Task Force-7 (CJTF-7) Report, Personnel Casualty Reports (PCRs), Serious Incident Reports (SIRs), and records related to condolence payments. Of course, the failure to produce a document "cannot by

---

[1] The majority acknowledges that CENTCOM was not required to search either physical locations or records from the U.S. Marine Corps Forces, Central Command (MARCENT). Majority at 6. Nor did the majority hold that CENTCOM should have searched any other location besides NIPR.

itself prove the searches inadequate." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 771 (9th Cir. 2015). Rather, there must be "evidence of circumstances sufficient to overcome an adequate agency affidavit." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Here, there are no such circumstances. The majority primarily relies on a declaration by Thomas Wagoner, which states that "[w]hen a Marine is killed or injured during an operation" documents such as the PCRs, SIRs and condolence records are sent by email on NIPR.[2] But Guzman's declarations clarify that CENTCOM did not start preserving email communications from high ranking personnel until 2011 to 2012, and emails from lower ranking personnel were destroyed after 10 years. Therefore, any search of NIPR for emails relating to the 2004 incident would have been futile. The majority also relies on a 2017 U.S. Marine Corps Forces, Central Command (MARCENT) declaration which states that MARCENT searched for documents transmitted via "shared drives" and "portals" of NIPR. Majority at 4-5. But there is no evidence in the record that CENTCOM transmitted documents via shared drives or portals in NIPR in 2004, or that any documents might now be found there. Finally, NPR has not presented

---

[2]Although the majority also references the 2007 Marine Inspector General Report, Majority at 4, CENTCOM is distinct from the Marine Corps, so the report sheds no light on where CENTCOM documents are likely to be found.

any information indicating that a 2004 Central Joint Task Force-7 report could be found on NIPR, and has not raised a genuine dispute about Guzman's good faith declaration that there are no places other than SIPR that are likely to contain responsive records.

Because there is no genuine issue of material fact that CENTCOM made a diligent search for documents "in the places in which they might be expected to be found," *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009) (internal quotation marks and citation omitted), we should conclude that CENTCOM's search was reasonably calculated to find responsive documents. Therefore, I dissent from Part 1 of the majority opinion.